David SCHALK and Ronald T. Smith, Plaintiffs–Appellants,

v.

William K. REILLY, Administrator, U.S. Environmental Protection Agency, Defendant–Appellee.

Sarah E. FREY and People Against the Incinerator (PATI), an Unincorporated Association, Plaintiffs–Appellants,

v.

William K. REILLY, in his official capacity as administrator of the United States Environmental Protection Agency, Defendant–Appellee.

Nos. 89–1141, 89–1276.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 28, 1989.

Decided April 24, 1990.

Rehearing and Rehearing In Banc Denied May 30, 1990.

David Schalk, Bloomington, Ind., pro se.

Ronald T. Smith, Bloomington, Ind., pro se.

Deborah J. Daniels, U.S. Atty., Indianapolis, Ind., Martin W. Matzen, M. Alice Thurston, Dept. of Justice, Land & Natural Resources Div., Washington, D.C., for defendant-appellee.

Edward L. Rogers, Washington, D.C., Rudolph W. Savich, Bloomington, Ind., for plaintiffs-appellants.

John Blair, Indianapolis, Ind., Richard E. Condit, Washington, D.C., amicus curiae, for Hoosier Environmental Council and Indiana Public Interest Research Group.

Before WOOD, Jr., RIPPLE, and MANION, Circuit Judges.

MANION, Circuit Judge.

David Schalk and Sara Frey brought separate citizens suit challenges to a consent decree entered into by Westinghouse and the Environmental Protection Agency (EPA) to clean up hazardous waste sites in and around Bloomington, Indiana. The district court separately dismissed both cases for lack of subject matter jurisdiction. Schalk and Frey appealed, and their cases were consolidated. We affirm.

## I. Statutory Background

The Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), as amended by the Superfund Amendments and Reauthorization Act of 1986 (SARA), provides a statutory scheme for cleaning up hazardous substances. These laws allow the EPA to undertake direct removal or remedial action to protect the public health or welfare or the environment when it determines that release of a hazardous substance poses an imminent and substantial danger. The EPA may also determine that the party responsible for the release will take appropriate removal or remedial action.[1]

---

1. Removal refers to short-term action taken to halt the immediate risks posed by hazardous wastes. *See* 42 U.S.C. § 9601(23). Remedial action refers to permanent remedies taken in-

Before remedial action is taken, the site is studied and various cleanup alternatives are considered. The National Oil and Hazardous Substances Pollution Contingency Plan (NCP), 40 C.F.R. Pt. 300 (1983), sets out the criteria and procedures to be followed in comparing remedial alternatives and choosing a response. The NCP in effect when the consent decree in this case was signed required the EPA to prepare a Remedial Alternatives Assessment by signing an Enforcement Decision Document. The Remedial Alternatives Assessment served essentially the same purposes as the present-day Remedial Investigation/Feasibility Study—determining the nature and extent of contamination, then studying the merits of proposed alternatives. After a period of public comment, the EPA was required to select a remedy and memorialize it in an Enforcement Decision Document (now called a Record of Decision).

The statutory authority for citizens suits pursuant to CERCLA was added by the 1986 SARA amendments, section 310, 42 U.S.C. § 9659. The amendments allow a citizen to maintain a civil action against any person or the government for violating any provision of CERCLA. Section 310(a)(2) provides for suits against the President or any other officer of the United States, including the administrator of the EPA, "where there is alleged a failure ... to perform any act or duty under [CERCLA] ... which is not discretionary...." 42 U.S.C. § 9659(a)(2). However, this section is qualified by the phrase "Except as provided in ... section 9613(h) of this title (relating to timing of judicial review)...."

Section 9613(h)(4) provides:

**(h) Timing of review**

No Federal court shall have jurisdiction under Federal law other than under section 1332 of Title 28 (relating to diversity of citizenship jurisdiction) or under State law which is applicable or relevant and appropriate under section 9621 of this title (relating to cleanup standards) to review any challenges to removal or remedial action selected under section 9604 of this title, or to review any order issued under section 9606(a) of this title, in any action except one of the following:

\* \* \* \* \* \*

(4) An action under section 9659 of this title (relating to citizens suits) alleging that the removal or remedial action taken under section 9604 of this title or secured under section 9606 of this title was in violation of any requirement of this chapter. Such an action may not be brought with regard to a removal where a remedial action is to be undertaken at the site.

## II. Proceedings

In 1983 the United States sued Westinghouse to force cleanup of two landfills where Westinghouse had disposed of polychlorinated biphenyls (PCBs) and other hazardous substances. *See United States v. Westinghouse Electric Corp.*, No. IP 83–9–C (S.D.Ind.1983). The State of Indiana intervened as a plaintiff in that action. That case was consolidated with another involving two other sites. *City of Bloomington v. Westinghouse Electric Corp.*, No. IP 81–448–C (S.D.Ind.1981). Two more sites were brought into settlement negotiations in late 1983.

The parties agreed to a consent decree in December 1984 and immediately released its terms to the public. The decree involved all six sites, and required that comprehensive remedial measures be undertaken at each site. The agreement required the measures to be undertaken in two steps: first, a removal action involving surface excavation and capping of abandoned dump sites; and second, the burning of hazardous wastes in a trash-fired incinerator.

The proposed consent decree was subjected to intensive public scrutiny, including 14 public meetings, media interviews and votes before various city, county and state governmental bodies. None of those meetings was required by federal law.

stead of or in addition to removal, and includes destruction of hazardous wastes. *See* 42 U.S.C. § 9601(24). *See also State of Alabama v. EPA,*

871 F.2d 1548, 1551 n. 1 (11th Cir.1989). This case involves a proposed remedial action.

The proposed consent decree was approved and signed by each governmental entity that was a party to the litigation. The consent decree was lodged with the district court on May 20, 1985, pending conclusion of a 30–day public comment period required by Department of Justice regulations. *See* 28 C.F.R. § 50.7. This comment period was extended by two weeks at the request of the Bloomington Common Council and area residents.

During this period a number of citizens, including plaintiffs David Schalk and Ronald Smith, commented on the consent decree, raising criticisms similar to those put forward in this lawsuit. Among other things, the comments suggested that the consent decree's proposed remedial measures were inadequate, that there was a lack of opportunity for meaningful public comment and review, that other remedial alternatives were not considered, that incineration is not a safe method for disposing of PCBs,[2] and that no adequate written assessment of the potential environmental effects of the remedy had been prepared.

The United States responded to the criticisms in its request that the district court approve the final version of the consent decree. The government noted that other methods of treatment and disposal of PCBs were considered and rejected as unsatisfactory. Further, more opportunities for public comment had already been provided than were legally necessary, although further public participation was planned in connection with the processing of permits required by the consent decree. The government further argued that the incinerator would be required to meet regulatory standards to ensure it did not release significant harmful emissions. Finally, the government pointed out that the application process for an incinerator permit required that a risk assessment, along with the results of a test burn, be submitted and evaluated.

The district court approved the consent decree in August 1985, holding that there were numerous public meetings prior to its acceptance, and that the decree was "fair, adequate, reasonable and appropriate."

In December of 1987, Schalk filed a *pro se* complaint in the U.S. District Court for the District of Columbia, alleging an "illegal plan to clean up hazardous wastes in and near Bloomington, Indiana" pursuant to the Westinghouse consent decree. Schalk's complaint stated that the administrator of the EPA violated federal law by failing to perform an Environmental Impact Statement pursuant to the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321 *et seq.*, and a Remedial Investigation/Feasibility Study pursuant to 40 C.F.R. 300.68(f), (g), and (h). Schalk's complaint asked the court to order the EPA to submit a document that complied with the written requirements of an Environmental Impact Statement or the Remedial Investigation/Feasibility Study, and to order the EPA to conduct adequate public hearings.

Plaintiffs Sarah Frey and "People Against the Incinerator," a nonprofit corporation, filed a similar complaint in the U.S. District Court for the District of Columbia in February 1988. Frey accused the EPA of taking "unlawful actions" in connection with the plan to clean up hazardous wastes in Bloomington. Frey attacked the EPA's failure to authorize an Environmental Impact Statement, its failure to allow meaningful public participation and its failure to study other potential remedial measures. Frey sought declaratory and injunctive relief that would require EPA to conduct further studies required by the National Environmental Policy Act and select an appropriate remedy "on the basis of proper studies," and without giving any special weight to the agency determination in favor of an incinerator.

---

**2.** David Schalk is the former Bloomington City Chemist, and Ronald Smith succeeded Schalk in that post in 1984. The substantive component of their claim and Frey's claim, which the district court did not reach, is the charge that PCBs—a type of man-made chemical compound that may harm living organisms—cannot properly be disposed of by an incinerator. These plaintiffs believe that heating and burning PCBs may even exacerbate damage to the environment and risk poisoning many citizens.

Both cases were removed to the Southern District of Indiana, which handled the *Westinghouse* case. In December of 1988, the district court separately dismissed each complaint for lack of subject matter jurisdiction. The district court concluded that the citizens suit provision of CERCLA, as amended by SARA, deprived the court of jurisdiction. Although the district court found the statute to be "not entirely clear," it examined legislative history and ruled that preenforcement review of EPA removal actions was premature.

In this consolidated appeal, the plaintiffs provide us with numerous reasons why they believe the district court had jurisdiction. They argue (1) that the section removing jurisdiction from the federal courts is inapplicable because this is a postenforcement challenge; (2) that the statute is improperly being applied retroactively; and (3) that they are not "challenging" a remedial action within the meaning of the statute.

We affirm the district court's judgment that it lacked subject matter jurisdiction over both suits. However, because the statute's plain language substantiates our holding, an extensive examination of the legislative history, as performed by the district court, is not necessary.

### III. Analysis

#### A. CERCLA's Plain Language

■ Federal court review of the remedial action proposed by Westinghouse and the EPA in their consent decree is explicitly barred by CERCLA's plain language. Under the heading "Timing of review," 42 U.S.C. § 9613(h) limits federal court jurisdiction to five specific circumstances. Plaintiffs assert that § 9613(h)(4), one of the five circumstances, confers jurisdiction on their challenge to the remedial action. In conjunction with relevant portions of § 9613(h)(4), it reads:

No Federal court shall have jurisdiction under Federal law ... to review any challenges to removal or remedial action selected ... except ...

\* \* \* \* \* \*

(4) An action under section 9659 ... alleging that the removal or remedial action *taken* under section 9604 of this title or *secured* under section 9606 of this title was in violation of any requirement of this chapter. Such an action may not be brought with regard to a removal where a remedial action is to be undertaken at the site. (Emphasis added.)

The obvious meaning of this statute is that when a remedy has been selected, no challenge to the cleanup may occur prior to completion of the remedy. As the Eleventh Circuit explained in *State of Alabama v. EPA*, 871 F.2d 1548, 1557 (11th Cir.1989) (emphasis in original):

The plain language of the statute indicates that section 113(h)(4) [3] applies only after a remedial action is actually completed. The section refers in the past tense to remedial actions *taken* under section 104 or *secured* under 106. Absent clear legislative intent to the contrary, this language is conclusive.

■ The final sentence in (h)(4) provides further support for this understanding of the statute's plain meaning. In a challenge to a removal action where a remedial action "is to be undertaken," no action may be brought. That is our situation. An incinerator has been chosen as the method to dispose of hazardous wastes in the Bloomington area, but the remedial action outlined in the consent decree has not yet been undertaken. Congress intended by this statute to prevent unnecessary delay in implementing hazardous waste cleanups. That type of delay would surely result if plaintiffs were successful in requiring the EPA to conduct Environmental Impact Statements and further Feasibility Studies. The statute precludes federal court review at this stage—when a remedial plan has been chosen, but not "taken" or "secured."

#### B. CERCLA's Legislative History

Because we believe the plain language of the statute is clear, we need not engage in the lengthy examination of legislative his-

---

**3.** CERCLA section 113(h)(4) is codified at 42    U.S.C. § 9613(h)(4).

tory undertaken by the district court.[4] To the extent that we do review the legislative history, we are persuaded the district court correctly determined that the history supported its construction of the statute. The legislative history supports the conclusion that federal courts are deprived of subject matter jurisdiction where remedial action has not been completed. The Eleventh Circuit reached the same result in *State of Alabama v. EPA:* "The legislative history behind this section supports rather than clearly contradicts this conclusion." 871 F.2d at 1557.

The final conference committee report that reconciled conflicting House and Senate versions explained that only "completed" remedial actions could be challenged. H.R.Rep. No. 962, 99th Cong., 2d Sess. 224 (1986), U.S.Code Cong. & Admin.News 1986, p. 2835. The House Committee on Energy and Commerce stated that "there is no right to judicial review of the Administrator's selection and implementation of response actions until after the response action have been completed to their completion [sic]." H.R.Rep. No. 253(I), 99th Cong., 2d Sess. 81 (1986), U.S.Code Cong. & Admin.News 1986, p. 2863. The House Judiciary Committee noted that "[t]his provision is not intended to allow review of the selection of a response action prior to completion of the action...." H.R.Rep. No. 253(III), 99th Cong., 2d Sess. 23 (1986), U.S.Code Cong. & Admin.News 1986, p. 3046. These committee reports, along with many other statements of congressional leaders, far outweigh the few contrary remarks of individual legislators cited by plaintiffs. The statute as written clearly states the intent of Congress.

## C. Applicability of the SARA Amendments

The plaintiffs contest the applicability of § 9613(h) to this case on essentially two theories. First, they argue that "retroactive" application of the 1986 SARA amendments to the 1984 consent decree creates a "manifest injustice." Second, they contend that this isn't really a "challenge" at all within the meaning of the statute. Neither of these contentions have merit.

■ Frey suggests that the district court's use of 42 U.S.C. § 9613(h) to conclude that it lacked jurisdiction was improper because it constitutes retroactive application of that statute. This argument fails for two reasons. First, the jurisdiction of the district court over the 1984 consent decree was not at issue; the jurisdiction of the court over the plaintiffs' claims was. Both plaintiffs filed their citizens suit challenges after the effective date of the 1986 SARA amendments; Schalk in August 1987 and Frey in March 1988. Second, even if this is considered "retroactive" application, a court should "apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Bradley v. School Board of City of Richmond,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974). The plaintiffs' arguments for "manifest injustice" are unpersuasive. *See U.S. v. Seymour Recycling Corp.,* 679 F.Supp. 859 (S.D.Ind.1987) (plaintiffs seeking injunction to halt EPA cleanup not deprived of due process by retroactive application of CERCLA). The jurisdictional bar in SARA merely codified the established rule that preimplementation review of response actions would not be allowed. *See, e.g., Lone Pine Steering Comm. v. EPA,* 777 F.2d 882, 886–87 (3rd Cir.1985), *cert. denied,* 476 U.S. 1115, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986) ("The statutory approach to the problem of haz-

---

**4.** While the district court found the plain language of the statute "not entirely clear," that description more appropriately describes the statute's legislative history. Both sides support their interpretation of the statute with lengthy quotations from senators and congressmen trying to put their spin on the statute's interpretation; these contradictory explanations further demonstrate the dangers of judicial reliance on legislative history instead of statutory text. *See, e.g., U.S. v. Taylor,* 487 U.S. 326, 108 S.Ct. 2413, 2423–24, 101 L.Ed.2d 297 (1988) (Scalia, J., concurring); *I.N.S. v. Cardoza–Fonseca,* 480 U.S. 421, 107 S.Ct. 1207, 1224, 94 L.Ed.2d 434 (1987) (Scalia, J., concurring); *Wallace v. Christensen,* 802 F.2d 1539, 1560 (9th Cir.1986) (Kozinsky, J., dissenting).

ardous waste is inconsistent with the delay that would accompany pre-enforcement review.... [W]e find in [CERCLA] an implicit disapproval of pre-enforcement judicial review."); *State of Alabama v. EPA*, 871 F.2d at 1558 ("Prior to the 1986 amendments that enacted section 113(h), courts uniformly held that challenges to a Record of Decision were barred before full implementation.") Furthermore, ample opportunity for public comment and involvement has been provided and much more will be allowed prior to implementation. This is not the plaintiffs' only chance to stop the incinerator.[5] No injustice is created by applying current law.

■ The plaintiffs also assert that they are not really challenging the consent decree or its choice of an incinerator, but merely asking that certain procedural requirements be met. However, challenges to the procedure employed in selecting a remedy nevertheless impact the implementation of the remedy and result in the same delays Congress sought to avoid by passage of the statute; the statute necessarily bars these challenges. The judicial review itself slows the process down. *See Jefferson County v. United States*, 644 F.Supp. 178, 182 (E.D.Mo.1986) ("[J]udicial review of agency clean-up activities would hinder and delay the hazardous waste disposal. This delay would be inconsistent with the intent of Congress to allow swift clean-up actions.").

■ In any event, the plaintiffs are in fact challenging the remedy selected; the purpose of Environmental Impact Statements and Feasibility Studies can only be to demonstrate the need for a different remedy. Counsel for plaintiffs admitted at oral argument that if one of those studies suggested a better remedy the next step would be to enjoin implementation of the consent decree. *See State of Alabama v. EPA*, 871 F.2d at 1559 (rejecting plaintiffs' argument that they were not "challenging" the remedial action plan selected since they

were asking that it be enjoined). The district court correctly concluded that a "fair reading of plaintiffs' complaint here reveals that it is the EPA's selection of a remedy, not the implementation, that plaintiffs are challenging." In briefs and at oral argument, plaintiffs have persisted in attacking and ridiculing the incinerator remedy as dangerous, untested, and unworkable. At oral argument Frey's attorney reiterated that these studies should have been done "before they made their decision," and should still be performed "before [the incinerator project] goes forward."

### D. Jurisdiction Under the Administrative Procedure Act

■ The district court properly rejected plaintiffs' argument that the court had jurisdiction to consider the EPA's failure to perform an Environmental Impact Study under the National Environmental Policy Act (NEPA). While NEPA claims are presumptively reviewable under 28 U.S.C. § 1331 in conjunction with the Administrative Procedure Act (APA), 5 U.S.C. § 702, APA review is not available when a federal statute specifically precludes judicial review. *Block v. Community Nutrition Institute*, 467 U.S. 340, 345, 104 S.Ct. 2450, 2453, 81 L.Ed.2d 270 (1984). As the Eleventh Circuit stated in rejecting an identical assertion of jurisdiction:

> We have already concluded that Congress intended to remove challenges to remedial action plans from the jurisdiction of the federal courts until the remedial action has been taken. The district court thus lacked subject matter jurisdiction over the claims brought under the APA.

*State of Alabama v. EPA*, 871 F.2d at 1560.

### E. Constitutional Deprivations

Plaintiffs and amicus curiae Indiana Public Interest Research Group assert that

---

**5.** The government points out that in addition to the public participation already provided by the EPA according to Department of Justice regulations, 28 C.F.R. § 50.7, further opportunities will present themselves as plans for the incinerator take shape. The consent decree requires Westinghouse to obtain at least nine permits and approvals prior to construction of the incinerator, all of which require public input and are appealable.

plaintiffs' Fifth Amendment rights to substantive and procedural due process, meaningful access to the courts, and equal protection are violated by the district court's dismissal for lack of subject matter jurisdiction. These novel theories rest on undesirable expansions of the meaning of the Fifth Amendment, and we decline to adopt them. As we already have made clear, the plaintiffs in this matter and other interested citizens have received numerous opportunities for input into the process, and will receive more such opportunities in the future. No recognized constitutional rights are implicated.

### IV. Conclusion

Federal courts lack subject matter jurisdiction to consider challenges to remedial actions that have not been "taken" or "secured." The judgment of the district court dismissing the actions for lack of subject matter jurisdiction is therefore

AFFIRMED.