**NORTH SHORE GAS COMPANY, an Illinois corporation, Plaintiff,**

v.

**The UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, William K. Reilly, Administrator of USEPA Valdas V. Adamkus, Regional Administrator of USEPA Region V, The Corps of Engineers of the United States Army, Michael P.W. Stone, Secretary of the Army, Lt. General H.J. Hatch, Commander in Chief of Engineers, Lt. Colonel Randall Inouye, District Engineer, Chicago District, The Illinois Environmental Protection Agency, Bernard F. Killian, Director of IEPA, and Outboard Marine Corporation, a Delaware corporation, Defendants.**

**No. 90 C 7122.**

United States District Court,
N.D. Illinois, E.D.

Dec. 17, 1990.

**1414**

John Joseph Verscaj, Nancy J. Rich, Russell B. Selman, Bell, Boyd & Lloyd, Chicago, Ill., for North Shore Gas Co.

Gail C. Ginsberg, U.S. Atty.'s Office, Chicago, Ill., for E.P.A., William K. Reilly, Administrator of USEPA, Valdas V. Adamkus, Regional Administrator of USEPA Region V, Corps of Engineers of the United States Army, Michael P.W. Stone, Secretary of the Army, H.J. Hatch, Lt. Gen., Commander in Chief of Engineers, and Randall Inouye, Lt. Colonel, Dist. Engineer, Chicago Dist.

Douglas J. Rathe, Cook County State's Atty.'s Office, Chicago, Ill., for Illinois E.P.A. and Bernard F. Killian, Director of IEPA.

Steven H. Frankel, Dale M. Cohen, Jeffery C. Fort, Sonnenschein, Nath and Rosethal, Chicago, Ill., for Outboard Marine Corp., a Delaware Corp.

### ORDER

NORGLE, District Judge.

Before the court is the joint motion of defendants Outboard Marine Corporation ("OMC") and "federal defendants"—the United States Environmental Protection Agency ("USEPA"), William K. Reilly, Administrator of USEPA, Valdas V. Adamkus, Regional Administrator of USEPA Region V, the Corps of Engineers of the United States Army, Michael P.W. Stone, Secretary of the Army, Lt. General H.J. Hatch, Commander in Chief of Engineers, and Lt. Colonel Randall Inouye, Chicago District—to dismiss plaintiff's complaint pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6).[1] For the reasons stated below, the motion is granted.

### FACTS

On December 10, 1990, plaintiff North Shore Gas Company ("North Shore") filed this action for declaratory and injunctive relief, challenging the "imminent excavation and construction" of a boating slip on a Superfund Site abutting the Waukegan Harbor of Lake Michigan, in Waukegan, Illinois. Complaint, ¶ 12. North Shore alleges that the construction of this boating slip may expose hazardous compounds presently in the soil and contaminate the surrounding environment. North Shore claims that due to the likelihood of contamination, construction of the boating slip will violate various federal environmental statutes and regulations as well as creating a statutory and common law public nuisance under state law. Together with its complaint, plaintiff filed a motion for temporary restraining order to enjoin construction of the boating slip and a motion for reassignment based on relatedness.[2]

All parties acknowledge that the present action is related to *United States v. Outboard Marine Corp.*, 88 C 8571 (N.D.Ill.), an action filed with this court in October of 1988. In the *Outboard Marine* case, the

---

1. OMC filed a written motion to dismiss in which the federal defendants joined at oral argument on the motion.

2. This action was originally assigned to the docket of Judge Marvin E. Aspen, of this district. Upon hearing no objection from any of the defendants, all of whom were represented in court at the December 12, 1990 court call, the court granted the motion for reassignment from the bench.

USEPA brought a CERCLA[3] action against OMC seeking the reimbursement of response costs relating to the removal of polychlorinated biphenyls ("PCBs") released from an OMC facility into Waukegan Harbor.[4] In April 1989, this court entered a detailed consent decree (the "OMC Decree") in which OMC agreed, among other things, to pay $19 million over a three year period to fund the PCB cleanup. The remedial action set forth in the Decree requires OMC, among other things, to dredge certain PCB contaminated areas in the harbor, and to store the dredged contaminants in a containment cell to be built at a location presently occupied by a boating slip owned by Larsen Marine Co. ("Slip No. 3"). Because the remedial action requires Slip No. 3 to be closed, the OMC Decree provides for the construction of a new boating slip ("New Slip") adjacent to Slip No. 3 to compensate Larsen Marine Co. for the loss of its property. The construction of the New Slip is a necessary prerequisite to the closing of Slip No. 3, which must be accomplished before the containment cell can be built or the dredging can begin.

In early 1989, the USEPA and IEPA learned that the land adjacent to the PCB contamination area was also contaminated with hazardous waste. This land had been the site of various industrial facilities over the years, including among other things, an operating facility owned by North Shore, another gas manufacturing facility known as the Waukegan Manufactured Gas and Coke Plant, and a creosoting facility run by prior occupants in the early 1900s. Soil samples from this site indicate the presence of hazardous substances[5] which may be linked to the former industrial activities on this site. Shortly after the consent decree had been entered in the *Outboard Marine*

case, the USEPA identified this property adjacent to the OMC PCB contamination area, as a Superfund Site (the "Superfund Site"). The USEPA and IEPA notified North Shore and other previous occupants of this property that they were potentially responsible parties ("PRPs") under the Superfund Amendments and Reauthorization Act of 1986 ("Superfund")[6] for the contamination on this site. In August 1990, North Shore signed an Administrative Order on Consent with the USEPA and IEPA,[7] agreeing to conduct a detailed Remedial Investigation/Feasibility Study ("RI/FS") of the potential hazardous waste dangers and feasible remedies at the Superfund Site. This administrative order has been entered as a final order with the USEPA.

Coincidentally, the construction location for the New Slip required by the OMC Decree falls within the Superfund Site on which North Shore is obligated, pursuant to the Administrative Order, to conduct its RI/FS. North Shore claims that the investigation of the Superfund Site has not been sufficient to determine the extent of the potential dangers which may result from the excavation and construction of the New Slip. North Shore also alleges that excavation of the soil on the Superfund Site will hamper or destroy its efforts to conduct a complete and accurate investigation of the site, as well as create a hazard for citizens using the New Slip or otherwise exposed to the contaminants. North Shore seeks to enjoin the construction of the New Slip until it completes its RI/FS of the Superfund Site.

In its complaint, North Shore seeks this relief under four legal theories. In count I, North Shore requests relief from the federal defendants to the action pursuant to the National Environmental Policy Act

---

**3.** Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended by the Superfund Amendments and Reauthorization Act of 1986, 42 U.S.C. §§ 9604 and 9607.

**4.** A related case against OMC, filed concurrently by the Illinois Environmental Protection Agency ("IEPA"), was subsequently consolidated with the USEPA case.

**5.** The hazardous substances discovered on this site include Polynuclear Aromatic Hydrocarbons (PAHs) and phenolic compounds, but do not include PCBs.

**6.** *See* 42 U.S.C. § 9604.

**7.** The other PRPs are not parties to this Administrative Order.

("NEPA"), 42 U.S.C. § 4321 et seq. In count II, plaintiff asserts claims against all defendants under Section 7002(a)(1)(A) of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a)(1)(A). Plaintiff asserts state law claims against all defendants for creation of a statutory public nuisance and a common law public nuisance in counts III and IV, respectively. OMC and USEPA have moved to dismiss North Shore's complaint in its entirety for lack of subject matter jurisdiction.

## DISCUSSION

Defendants' motion to dismiss is based primarily upon 42 U.S.C. § 9613(h) which states in pertinant part:

No Federal court shall have jurisdiction under Federal law other than under section 1332 of Title 28 (relating to diversity of citizenship jurisdiction) or under State law which is applicable or relevant and appropriate under section 9621 of this title (relating to cleanup standards) to review any challenges to removal or remedial action selected under section 9604 of this title, or to review any order issued under section 9606(a) of this title, in any action except one of the following:

\* \* \* \* \* \*

(4) An action under section 9659 of this title (relating to citizens suits) alleging that the removal or remedial action taken under section 96–4 of this title or secured under section 9606 of this title was in violation of any requirement of this chapter. Such an action may not be brought with regard to a removal where a remedial action is to be undertaken at the site.

Defendants characterize plaintiff's complaint as a challenge to the remedial action required by the OMC Decree which § 9613(h) expressly places outside the court's subject matter jurisdiction. Defendants cite to two recent federal appellate decisions, *Schalk v. Reilly*, 900 F.2d 1091 (7th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 509, 112 L.Ed.2d 521 (1990) and *State of Alabama v. United States Environmental Protection Agency*, 871 F.2d 1548 (11th Cir.1989), *cert. denied*, —— U.S.

——, 110 S.Ct. 538, 107 L.Ed.2d 535 (1989), in support of their position.

In *Schalk*, the Seventh Circuit upheld the dismissal of two citizens suits seeking federal court review of remedial action proposed in a consent decree between the USEPA and Westinghouse Electric Corporation, concerning PCB contamination in several sites in Monroe County, Indiana. The Seventh Circuit held that the "obvious meaning of this statute [§ 9613(h)(4) ] is that when a remedy has been selected, no challenge to the cleanup may occur prior to completion of the remedy." *Schalk*, 900 F.2d at 1095. In rejecting plaintiffs' argument that they were not really challenging the Westinghouse consent decree, but were merely asking that certain procedural requirements be met, the court stated:

[C]hallenges to the procedure employed in selecting a remedy nevertheless impact the implementation of the remedy and result in the same delays Congress sought to avoid by passage of the statute; the statute necessarily bars these challenges. The judicial review itself slows the process down. *See Jefferson County v. United States*, 644 F.Supp. 178, 182 (E.D.Mo.1986) ("[J]udicial review of agency clean-up activities would hinder and delay the hazardous waste disposal. This delay would be inconsistent with the intent of Congress to allow swift clean-up actions.").

900 F.2d at 1097. The Seventh Circuit also noted that the district court properly rejected plaintiffs' argument that the court had jurisdiction to consider the USEPA's failure to perform an Environmental Impact Study under the National Environmental Policy Act (NEPA). "While NEPA claims are presumptively reviewable under 28 U.S.C. § 1331 in conjunction with the Administrative Procedure Act (APA), 5 U.S.C. § 702, APA review is not available when a federal statute specifically precludes judicial review." 900 F.2d at 1097.

The Eleventh Circuit provided a similar interpretation of § 9613(h)(4) in *Alabama v. EPA*. In that case, the State of Alabama and various state officials sued to enjoin an EPA-approved shipment of toxic

waste from South Houston, Texas to treatment facilities in Alabama. Applying § 9613(h)(4), the Eleventh Circuit reversed the district court's granting of preliminary injunction and summary judgment, dissolved the lower court's permanent injunction, and dismissed the case for lack of subject matter jurisdiction. The court stated:

> Section 113(h)(4) [42 U.S.C. § 9613(h)(4)] in general addresses the timing of judicial review of EPA cleanup efforts. The plain language of the statute indicates that section 113(h)(4) applies only after a remedial action is actually completed. The section refers in the past tense to remedial actions *taken* under section 104 or *secured* under 106. Absent clear legislative intent to the contrary, this language is conclusive. [Citation omitted.] [Emphasis in original.]

*Alabama v. EPA*, 871 F.2d at 1557. In its subsequent discussion of the legislative history of § 9613, the Eleventh Circuit notes Congress's intent to eliminate the *right to* judicial review of the EPA's selection and implementation of response actions until after the response actions have been completed. *Id.* The legislative history to § 9613 suggests that in balancing the right to review a potentially inadequate or flawed response plan with the interest in implementing prompt cleanup of hazardous waste sites, Congress gave priority to prompt cleanup. *See, e.g., Chemical Waste Management, Inc. v. United States Environmental Protection Agency*, 673 F.Supp. 1043, 1055 (D.Kan.1987) ("the legislative history of section 113(h) establishes that it was designed to preclude piecemeal review and excessive delay of cleanup").

At oral argument and in its memorandum in opposition to OMC's and USEPA's joint motion to dismiss, North Shore argues that § 9613 is inapplicable here because North Shore is not challenging the response plan set forth in the OMC Decree. Rather, North Shore argues, this action applies only to the site of the former Waukegan Manufactured Gas and Coke Facility—a Superfund Site separate and distinct from the OMC PCB cleanup site controlled by the OMC Decree. Because this Superfund Site, unlike the OMC PCB site, is yet uninvestigated and unremediated (i.e., no assessment and cleanup plan has been approved), § 9613 does not apply here. North Shore contends that as a PRP to the Superfund Site, it has a right to challenge activities affecting this site, both to protect its interest in meeting its obligations under the Administrative Order and to protect the safety of citizens exposed to the site.[8]

The court finds North Shore's effort to avoid the jurisdictional mandate of § 9613 unpersuasive. Although the Superfund Site may be distinct and separate from the OMC PCB site in some regards (insofar as it is the subject of a separately initiated EPA action and it involves different contaminants and additional PRPs), the two sites are inseparably intertwined for the purposes of this action in that the remedy sought by North Shore to protect its interests in the Superfund Site unquestionably obstructs the PCB remediation activity which is mandated by the OMC Decree and insulated from challenge by § 9613.[9] Thus, North Shore's argument to avoid § 9613 is flawed in its premise—this action may not be construed as relating only to the Superfund site as distinct from the OMC PCB site to which the OMC Decree applies.

North Shore also argues that defendants' jurisdictional challenge places it in a no-win

---

8. As an additional ground for dismissal, OMC argues that North Shore has no standing to bring this action. *See* OMC's Motion to Dismiss, pp. 4–5. OMC asserts that the only injury which North Shore alleges it will sustain as a result of defendants' actions is a potential increase in the cost of investigating and remediating the New Slip area—an economic injury which places it outside the "zone of interests" protected by the federal environmental statutes. Defendants also point out that any economic injury to North Shore can be redressed in a cost recovery action under CERCLA at the end of the remedial action. Reply Memorandum in Support of Federal Defendants' Motion to Dismiss, p. 6. Because the court dismisses this action on other grounds, it need not reach the standing issue.

9. As noted above, not only is the construction of the New Slip mandated by the OMC Decree, but it is a necessary precondition to much of the substantive PCB cleanup work which the Decree was designed to accomplish.

situation. On the one hand, North Shore was not a party to the OMC action and had no standing to intervene as the Superfund Site had not been identified by the USEPA at the time the OMC Decree was being negotiated. On the other hand, it is this decree which is now being invoked to prevent North Shore from asserting a challenge to events concerning the Superfund Site to which it is a PRP. North Shore's argument illustrates the conflict which is created by the rather ironic facts of this case. As a general principle, North Shore does have the right to challenge activities occurring on uninvestigated and unremediated property which has been identified as a Superfund Site. However, to the extent that plaintiff's otherwise justiciable right to challenge the building of the New Slip conflicts with the OMC Decree—an existing consent decree "protected" by § 9613—something must give way.

Given the clear legislative history of § 9613 and the unambiguous interpretation which the federal appellate courts have given this statute, the court finds that the mandate of § 9613 must prevail. In the *Schalk* decision, the Seventh Circuit found that Congress, in drafting § 9613, had intended to bar any challenges which would delay any cleanup activity to which the USEPA had given final approval. *Schalk*, 900 F.2d at 1097. Congress apparently intended both to facilitate prompt cleanup action and to give some deference to the judgment of the USEPA, which it created to protect the public interest in enforcing federal environmental laws. North Shore cites no cases creating any exceptions to the jurisdictional bar of § 9613(h)(4). Having determined that § 9613 applies to bar any challenge to the construction of the New Slip, this court finds that it lacks jurisdiction to consider North Shore's assertion of its rights concerning the Superfund Site, as those rights conflict with the OMC Decree.

The court shares plaintiff's concern for the potential environmental problems arising from construction on the Superfund Site. However, the court notes that the USEPA and the IEPA are not, as plaintiff suggests, turning a deaf ear to this concern. As plaintiff acknowledges in numerous points in its submissions, the USEPA has already altered its construction plans for the New Slip in light of the contamination information provided by North Shore. Specifically, the USEPA has moved the construction site for the New Slip approximately 60 feet north of the location contemplated in the OMC Decree, and it has rotated the angle of the New Slip approximately 5 degrees. It has informed North Shore that it is requiring OMC to implement these changes because it believes that this change will avoid the potential contamination problems present in the original location. Complaint, ¶ 18. Further, the USEPA acknowledges its obligation to address the issues presented by the discovery of contamination at the New Slip site, as they arise, both in the course of the Superfund action for that site and in connection with OMC's remedial action. Reply Memorandum, p. 3. Although North Shore disputes the wisdom of the USEPA's decisions concerning the New Slip construction, it may not delay the OMC PCB cleanup to litigate this difference of opinion.

CONCLUSION

For the reasons discussed above, defendants' motion to dismiss is granted and plaintiff's complaint is dismissed for lack of subject matter jurisdiction.

IT IS SO ORDERED.