**Mary H. YSLAVA, et al., Plaintiffs,**

v.

**HUGHES AIRCRAFT COMPANY, Defendant.**

**Joe Ann LANIER, et al., Plaintiffs,**

v.

**HUGHES AIRCRAFT COMPANY, Defendant.**

Nos. CIV 91–525 TUC JMR, CIV 92–564 TUC JMR.

United States District Court, D. Arizona.

Nov. 17, 1993.

Sheldon Lazarow, Lazarow & Lazarow, Tucson, AZ, Jerry S. Cohen, Anthony Z. Roisman, Richard S. Lewis, Cohen, Milstein, Hausfeld & Toll, Washington, DC, Robert A. Bonn, Tucson, AZ, for plaintiffs.

Bruce A. Featherstone, Kirkland & Ellis, Denver, CO, Michael J. Meehan, Janet C. Bostwick, Meehan & Associates, Tucson, AZ, for defendant Hughes Aircraft Co.

### *ORDER*

ROLL, District Judge.

### *INTRODUCTION*

Numerous lawsuits allege Hughes Aircraft Company ("Hughes") caused the contamination of groundwater in the Tucson International Airport area resulting in personal injury and/or death to plaintiffs or plaintiffs' decedents. Hughes operates a manufacturing facility on this property near the Tucson International Airport. Plaintiffs allege that from 1952 to 1981 Hughes disposed of hazardous wastes and substances, including TCE, by dumping these substances on its property. Plaintiffs claim these substances

seeped through the soil and entered the groundwater from which plaintiffs received drinking water. Plaintiffs further allege Hughes was aware of the potential for contamination as early as 1957. Hughes defends claiming it has always disposed of any hazardous substances in accordance with state of the art procedures.

Plaintiffs in *Yslava* raise federal and state claims. Plaintiffs seek to recover costs already incurred in determining whether and to what extent they have been exposed to contaminated water as well as future medical monitoring costs as "costs of response" under § 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601 *et seq.* ("CERCLA"). Plaintiffs allege they and/or plaintiffs' decedents have been exposed to hazardous wastes and substances as a result of Hughes' conduct. These plaintiffs are already ill or contend that this exposure increases their risk of contracting cancer and other serious illnesses in the future and thus seek regular medical testing and evaluation to assure early detection of such diseases. Plaintiffs also seek to recover attorneys' fees.

Under state law, plaintiffs also seek to recover damages for medical monitoring costs already incurred as well as future medical monitoring costs under state law theories of negligence, nuisance, trespass and strict liability. Plaintiffs also seek attorneys' fees in connection with their state law claims.

On November 1, 1993, the Court conducted a hearing on multiple motions filed by the parties. At the hearing, the Court granted the *Yslava* plaintiffs' Motion for Leave to File a Second Amended Complaint. Further, the Court denied Hughes' Motion to Modify Paragraph 4 of this Court's January 25, 1993 Order. The Court took the remaining motions under advisement.

Under advisement and the subject of this Order are Hughes' Motion to Dismiss plaintiffs' medical monitoring claims, Hughes' Motion to Dismiss plaintiffs' claims for attor-

neys' fees and the *Lanier* plaintiffs' Motion for Class Certification.[1]

## DISCUSSION

### Motion to dismiss claims for medical monitoring

#### Medical Monitoring under CERCLA

Plaintiffs seek to recover costs for medical monitoring as "response costs" under § 107(a) of CERCLA. Hughes moves to dismiss these claims arguing that 1) private plaintiffs may not recover medical monitoring cost under CERCLA, and 2) medical monitoring costs do not qualify as "response costs" under CERCLA. Thus, Hughes asserts plaintiffs' claims fail as a matter of law and must be dismissed.

■ Private plaintiffs may not recover medical monitoring costs as "response costs" under CERCLA. *Daigle v. Shell Oil Company,* 972 F.2d 1527 (10th Cir.1992). Even assuming a private party could recover "response costs," medical monitoring programs do not constitute response costs under CERCLA. *Id.* at 1533–37. *But see Brewer v. Ravan,* 680 F.Supp. 1176 (M.D.Tenn.1988); *Williams v. Allied Automotive,* 704 F.Supp. 782 (N.D. Ohio 1988).

Accordingly, Hughes' motion to dismiss plaintiffs' medical monitoring claims *under CERCLA* is **GRANTED.**

#### Medical Monitoring under state law

■ Under state law, plaintiffs seek to recover damages for medical monitoring costs already incurred as well as future medical monitoring costs under state law theories of negligence, nuisance, trespass and strict liability. Hughes contends the plaintiffs' state law claims for medical monitoring must be dismissed because the Court lacks subject matter jurisdiction over these state law claims.

Hughes claims 42 U.S.C. § 9613(h) operates as a jurisdictional bar precluding this claim.[2] As support, Hughes maintains that

---

1. On October 21, 1993, the Court granted the *Yslava* and *Lanier* plaintiffs' joint motion to consolidate hearings on Hughes' Motions to Dismiss (attorneys' fees and medical monitoring claims). Accordingly, this Order addresses the *Yslava* and

*Lanier* medical monitoring claims together and the *Yslava* and *Lanier* attorneys' fees claims together.

2. In relevant part, § 9613(h) provides:

the federal Agency for Toxic Substances and Disease Registry ("ATSDR") possesses the exclusive authority to implement medical monitoring programs and that ATSDR has not done so. Hughes alleges plaintiffs' state law claims for medical monitoring challenge the ATSDR's response actions thus implicating the jurisdictional bar of § 9613(h).

At the outset, § 9613(h) only bars challenges to "removal or remedial action." In *Daigle,* the court concluded that medical monitoring programs did not constitute response costs under CERCLA. *Daigle,* 972 F.2d 1527. The *Daigle* court found that medical monitoring is not recoverable under *CERCLA* because medical monitoring is not embraced within the meaning of "costs of response." *Id.* at 1533–37. Therefore, because "costs of response" does not include medical monitoring, and "costs of response" includes "removal" and "remedial action," medical monitoring cannot be either "removal or remedial action." Thus, § 9613(h) does not bar the plaintiffs' state law claims because plaintiffs seek medical monitoring and medical monitoring does not qualify as "removal or remedial action." *Contra In re Hanford Nuclear Reservation Litigation,* 780 F.Supp. 1551 (E.D.Wash.1991).

Not only does *Daigle* require this result, but Hughes argued this same conclusion as a basis for dismissal of the CERCLA medical monitoring claims. Hughes argued that medical monitoring programs did not qualify as "response costs" under CERCLA. Hughes thus concluded that medical monitoring costs could not be recovered under CERCLA.[3]

Even assuming medical monitoring programs qualify as removal or remedial action, the jurisdictional bar of § 9613(h) still does not preclude this Court's jurisdiction. Section 9613(h) bars "challenges" to removal or remedial action [*ie* response actions.] If the action does not "challenge" a response action, the jurisdictional bar does not apply.

Plaintiffs' state law medical monitoring claims in no way challenge a response action. Examining the underlying goals and purposes of CERCLA makes clear that plaintiffs' medical monitoring claims are not a challenge to response actions.

CERCLA was designed to protect public health and the environment by ensuring the prompt cleanup of hazardous wastes. H.R. REP. NO. 1016, 96th Cong., 2d Sess., pt. 1, at 17, reprinted in 1980 U.S.C.C.A.N. 6119, 6119. Congress was concerned that lengthy and protracted litigation filed during the progress of response actions would delay hazardous waste cleanups. These challenges would delay cleanup activities, increase response costs and discourage settlements and voluntary cleanups. *In re Hanford Nuclear Reservation Litigation,* 780 F.Supp. 1551, 1558 (E.D.Wash.1991) (citing H.R.Rep. No. 253(I), 99th Cong., 2d Sess. 139 (1986), *reprinted in* 1986 U.S.C.C.A.N. 2835, 2921).

Congress amended CERCLA adding § 9613(h) to further this policy of ensuring prompt cleanups.

> Congress was no doubt concerned, first and foremost, that clean-up of substances that endanger public health would be delayed if EPA were forced to litigate each detail of its removal and remedial plans before implementing them. Thus, the Senate Judiciary Committee Report stated that § 9613(h) barred pre-enforcement review ...

*Reardon v. United States,* 947 F.2d 1509, 1513 (1st Cir.1991) (en banc).

---

> No Federal court shall have jurisdiction under Federal law other than under section 1332 of Title 28 (relating to diversity of citizenship jurisdiction) or under State law which is applicable ... *to review any challenges to removal or remedial action* selected under section 9604 ... (emphasis supplied)
>
> 42 U.S.C. § 9613(h).

**3.** Hughes' attempt to harmonize its conflicting positions is unpersuasive. Hughes contends its positions are consistent in that, if and when ATSDR establishes a medical monitoring program pursuant to its authority under CERCLA, this would constitute acting on behalf of the public "to prevent, minimize, or mitigate damage to public health or welfare ..." thereby bringing the ATSDR action within the meaning of "removal." (Def.'s Mem.Supp.Dis. at 11, fn. 6). But, oddly, Hughes contends that if plaintiffs implement the identical program under state law, this does not prevent, minimize or mitigate damage to public health. The Court fails to see how these positions are "completely logical" as Hughes urges.

Indeed, § 9613(h)'s jurisdictional bar is intended to ensure the prompt and unencumbered cleanup of hazardous wastes. *See Schalk v. Reilly,* 900 F.2d 1091, 1097 (7th Cir.1990) (§ 9613(h) enacted to prevent judicial review from delaying prompt response to hazardous releases), *cert. denied* 498 U.S. 981, 111 S.Ct. 509, 112 L.Ed.2d 521 (1990). Courts have recognized that § 9613(h) will not apply to CERCLA actions which do not impair the goals of CERCLA and specifically the purpose of § 9613(h).

In *Reardon v. United States,* the court held that § 9613(h) did not deprive the federal district court of jurisdiction to hear a constitutional challenge to a lien placed on property pursuant to CERCLA. *Reardon,* 947 F.2d 1509. The court ruled that a due process challenge to the CERCLA lien provisions was not a challenge to "removal or remedial action" and thus § 9613(h) did not bar jurisdiction. *Id.* at 1515. The court found that extending jurisdiction to the plaintiffs' claims would not impair the underlying purposes of § 9613(h). *Id.*

Additionally, in *Chemical Waste Management, Inc. v. U.S. E.P.A.,* 673 F.Supp. 1043 (D.Kan.1987), Chemical Waste sued challenging procedures used by the EPA to determine that it was not in compliance with federal regulations. Despite the broad language of § 9613(h), the court ruled that § 9613(h) did not deprive the court of jurisdiction. The court first noted that § 9613(h) was designed to "preclude piecemeal review and excessive delay of cleanup." *Id.* The court then found that the plaintiffs were not potentially responsible parties whose suit would hinder a removal or remedial action and that the action did not seek a remedy that would delay a cleanup. *Id.* The court determined that the "plaintiffs [were] merely seeking review of EPA decisionmaking outside the context of a particular cleanup plan

..." *Id.* Accordingly, the court concluded § 9613(h) did not bar plaintiff's suit.

The same reasoning applies here. Plaintiffs are seeking to require Hughes to fund a medical monitoring fund. A medical monitoring program funded by Hughes will not delay or interfere with government cleanup activities at the TIA site.[4] The implementation of medical monitoring does not require the EPA to engage in any litigation whatsoever.[5] Plaintiffs' action in no way impedes the progress of the government's ongoing assessment and cleanup of the TIA site. As in *Reardon* and *Chemical Waste,* the instant action is not a suit by a potentially responsible party contesting their liability under CERCLA. Further, granting jurisdiction here will not frustrate § 9613(h)'s purpose of avoiding cleanup delays caused by potentially responsible parties challenging their liability for the cleanup. Section 9613(h) is intended only to bar challenges to liability under CERCLA since such suits would delay cleanups and force the EPA to engage in "piecemeal litigation." *Reardon,* 947 F.2d at 1513.

> When the essence of a lawsuit involves the contesting [of] *the liability of the plaintiff for cleanup costs,* the courts are to apply the provisions of section 113(h), delaying such challenges ...

*Id.* at 1514 (citing 132 Cong.Rec. § 14898 (daily ed. Oct. 3, 1986) (emphasis added by *Reardon* court)).

However, where as here, the action is one which, if successful, will not delay cleanups, will not interfere with cleanups, and will not require litigation by the EPA, the action does not constitute a "challenge." Thus, *Reardon* and *Chemical Waste* dictate that CERCLA actions seeking remedies unrelated to issues of liability for cleanup costs are not challenges to "removal or remedial action" and thus § 9613(h) does not apply. The underly-

---

4. Neither will medical monitoring discourage settlements. If anything, allowing plaintiffs to pursue medical monitoring encourages Hughes to settle this case. Hughes can agree to fund medical monitoring in exchange for a bar or limit on any other actions arising out of TCE contamination.

5. Section 9613(h) was enacted out of concern that potentially responsible parties would file suit

challenging their liability for cleanup costs. *Schalk,* 900 F.2d at 1097. Congress was concerned that such lawsuits would force the EPA to engage in litigation during the progress of response actions. This litigation would delay and interfere with the progress of cleanups. Thus, actions involving § 9613(h) which do not delay or interfere with ongoing response actions should not be barred by § 9613(h).

ing structure and purpose of CERCLA supports this conclusion. Given the purposes of CERCLA, § 9613(h) only properly precludes jurisdiction in actions where a potentially responsible party seeks to litigate either the existence or extent of liability for response costs. Here, the plaintiffs are not potentially responsible parties. Further, plaintiffs are not seeking to contest any liability for response costs.

The Court concludes that § 9613(h) does not bar plaintiffs' state law medical monitoring claims. The Court finds that medical monitoring is not "removal or remedial action" and thus outside the scope of § 9613(h). The Court further finds that plaintiffs' suit for medical monitoring does not represent a "challenge" to removal or remedial action.

Therefore, Hughes' motion to dismiss plaintiffs' state law claims for medical monitoring is **DENIED**.

### Hughes' Motion to Dismiss claims for attorneys' fees

*Attorneys' Fees for federal claims*

█ Count I of plaintiffs' complaint seeks recovery under § 107(a) of CERCLA. Plaintiffs also seek attorneys' fees if they prevail on this Count. However, private plaintiffs may not recover attorney fees under CERCLA. *Key Tronic Corp. v. United States,* 984 F.2d 1025 (9th Cir.1993).

Accordingly, Hughes' motion to dismiss plaintiffs' claim for attorney fees *under* CERCLA is **GRANTED**.

*Attorneys' Fees for state claims*

█ With certain exceptions, attorneys' fees are not generally recoverable unless provided for by contract or statute. *State v. Boykin,* 112 Ariz. 109, 113, 538 P.2d 383, 387 (1975). Hughes claims none of plaintiffs' state law claims (negligence, nuisance, trespass, strict liability) provide for recovery of attorneys' fees by statute, no contract exists and that no exception applies. Thus, Hughes argues plaintiffs' attorneys' fees are not recoverable under their state law claims.

█ The "private attorney general doctrine" allows a prevailing party to recover attorneys' fees absent statutory authority or

agreement. *See Arnold v. Arizona Department of Health Services,* 160 Ariz. 593, 610, 775 P.2d 521, 537 (1989) (en banc) (attorneys' fees awarded to plaintiffs in action compelling state and county to provide mental health services). *See also Arizona Center for Law v. Hassell,* 172 Ariz. 356, 837 P.2d 158 (1991) (attorneys' fees awarded under private attorney general doctrine after successful challenge to legislation).

Under the private attorney general doctrine, fees are recoverable where the plaintiff is acting as a "private attorney general" and confers substantial benefits on the general public. *Arnold,* 160 Ariz. at 609, 775 P.2d at 537. "The private attorney general doctrine is an equitable rule which permits courts in their discretion to award attorney's fees to a party who has vindicated a right that: (1) benefits a large number of people; (2) requires private enforcement; and (3) is of societal importance." *Id.*

█ Hughes contends that the plaintiffs' suit is tantamount to a private damage recovery. The Court is not so persuaded. The medical monitoring program at issue would have potentially thousands of participants who have an increased risk of contracting serious illnesses. Because this program would clearly benefit a large number of people, is of unquestionable societal importance and must be privately enforced, the private attorney general doctrine applies.

Thus, plaintiffs qualify as private attorneys general entitling them to attorneys' fees on their state law claims for medical monitoring. Accordingly, Hughes' Motion to Dismiss the plaintiffs' claims to attorneys' fees *under state law* is **DENIED**.

### Lanier Plaintiffs' Motion for Class Certification

█ The *Lanier* plaintiffs seek class certification pursuant to Fed.R.Civ.P. 23. A party seeking to certify a class bears the burden of demonstrating that all prerequisites for class certification have been met. *Rex v. Owens,* 585 F.2d 432, 435 (10th Cir. 1978). Before a class may be certified under Rule 23, the proponent must demonstrate: (1) the class is so numerous that joinder of all

members is impracticable (numerosity), and (2) there are questions of law or fact common to the class (commonality), and (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality), and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy). Fed.R.Civ.P. 23(a).

■ In addition to these four requirements under 23(a), a class proponent must also show one of the following under 23(b): 1) separate actions would create a risk of inconsistent adjudications with respect to individual members or would affect the interests of other members not parties to the class; 2) the party opposing the class has acted or refused to act on grounds generally applicable to the class making injunctive relief for the entire class appropriate; or (3) common questions of law or fact predominate over issues affecting only individual members and the class method is the superior method of adjudicating the action. Fed.R.Civ.P. 23(b).

■ At the outset, Hughes contests the existence of an identifiable class. *See Daigle v. Shell Oil Company,* 133 F.R.D. 600, 602 (D.Col.1990) (proponent must establish identifiable class exists even though not expressly required). Here, plaintiffs delineate 24 separate subgroups representing precise geographic areas where plaintiffs lived, worked or went to school. Wells located under Hughes' facility supplied drinking water to these specified areas. Persons within the specified areas were exposed to the contaminated water. Thus, the Court finds that the plaintiffs have rationally defined the proposed class with sufficient precision.

Rule 23(a) requires numerosity, commonality, typicality and adequacy. The Court finds that the proposed class satisfies each of these elements.

■ Hughes bases its main opposition to class certification on the commonality element. Hughes claims several factors vary from among class members thereby defeating commonality. Hughes cites the following factors: exposure history, amount of water used or consumed, personal medical histories affecting the risk of illness, Tucson's water distribution patterns, TCE concentration levels, sources of TCE, and Hughes' course of conduct over the years. Hughes contends individual proof is required for each plaintiff on each of these issues. Hughes claims class certification will render the litigation unmanageable due to the necessity for individualized proof on each of these issues.

Commonality is satisfied where "the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated." *Wakefield v. Monsanto,* 120 F.R.D. 112, 116 (E.D.Mo.1988) (quoting *American Finance System, Inc. v. Harlow,* 65 F.R.D. 94, 107 (D.Md.1974).) Indeed, "the existence of significant common legal or factual issues is enough to satisfy Rule 23(a)(2)'s threshold commonality requirement." *Boggs v. Divested Atomic Corp.,* 141 F.R.D. 58, 64 (S.D. Ohio 1991). This "threshold of commonality is not high." *In re School Asbestos Litigation,* 789 F.2d 996, 1010 (3rd Cir.1986) (quoting *Jenkins v. Raymark Indus. Inc.,* 782 F.2d 468 (5th Cir. 1986), *cert. denied,* 479 U.S. 852, 107 S.Ct. 182, 93 L.Ed.2d 117.

The simple question is whether there are issues common to all class members. *See Pruitt v. Allied Chemical Corp.,* 85 F.R.D. 100 (E.D.Va.1980). Further, the court in *In Re Asbestos School Litigation,* 104 F.R.D. 422, 429 (E.D.Pa.1984) stated:

A common question is one which arises from a "common nucleus of operative facts" regardless of whether the underlying facts fluctuate over the class period and vary as to individual claimants. In mass tort actions, the requirement of common questions has been satisfied by a showing of commonality either as to liability or as to the cause or impact of the tortious action.

Hughes' liability under CERCLA and various state laws relative to the disposal of hazardous material are legal issues common to the entire class. Additionally, factual commonality exists in that each proposed class member lived, worked or went to school

within certain specified geographical areas and were exposed to contaminated water.

Further, contrary to Hughes' claims, the amount of water used, the variation in TCE concentration, water distribution patterns, or Hughes' changing conduct over the years does not defeat the common nucleus of facts indicating Hughes as the source of the contamination. Further, any variation in susceptibility to disease also does not defeat commonality. Participation in the proposed medical monitoring program would only require that a plaintiff show he was exposed to at least 5ppb of TCE—a level the EPA has determined unsafe. All persons who were exposed to this level for at least a year would qualify for medical monitoring. Thus, proof of an exact or individual amount of exposure or particular risk level is not necessary. The core issues of liability and exposure are common to all class members. Commonality among the members exists notwithstanding certain factual variations. Thus, plaintiffs have satisfied 23(a).

Plaintiffs have also satisfied the requirements of 23(b). Rule 23(b) requires one of the following: 1) a risk of inconsistent adjudications, 2) the party's conduct is generally applicable to the class making injunctive relief appropriate, or 3) common issues predominate over individual ones and the class method of adjudication is superior to existing alternatives.

*23(b)(1)*

The Court finds class certification under 23(b)(1) inappropriate.

*23(b)(2)*

▮▮▮▮ Class certification is not appropriate under 23(b)(2) where the relief relates exclusively or predominantly to money damages. *In re School Asbestos Litigation,* 789 F.2d at 1008. Hughes asserts plaintiffs seek money damages here thus making certification under 23(b)(2) improper. Plaintiffs contend they seek injunctive relief in the form of a court supervised medical monitoring program.

In *Day v. NLO, Inc.,* 144 F.R.D. 330 (S.D. Ohio 1992), *vacated on other grounds,* 5 F.3d 154, (6th Cir.1993), the court found a request to "establish an elaborate medical monitoring

program of its own, managed by court-appointed court supervised trustees, pursuant to which a plaintiff is monitored by particular physicians and the medical data utilized for group studies" qualified as injunctive relief. *Id.* 144 F.R.D. at 335.

Here, plaintiffs do not merely seek money from Hughes. Plaintiffs seek to implement a court-supervised program requiring ongoing, elaborate medical monitoring. Accordingly, plaintiffs' relief qualifies as injunctive relief and the Court may properly certify the class under 23(b)(2).

*23(b)(3)*

Alternatively, plaintiffs' claims may also be certified under 23(b)(3) because their claims involve questions of law and fact that predominate over any individual issues. In *Sterling v. Velsicol Chemical Corporation,* 855 F.2d 1188 (6th Cir.1988), a class action was brought against a chemical company for injuries resulting from hazardous chemicals which leaked from a landfill and contaminated the local water supply. The court upheld certification under 23(b)(3) noting "[i]n mass tort accidents, the factual and legal issues of a defendant's liability do not differ dramatically from one plaintiff to the next." *Id.* at 1197.

When class certification is sought in the alternative under 23(b)(2) and (b)(3), the 23(b)(2) class is preferred. *Cook v. Rockwell Intern. Corp.,* 151 F.R.D. 378, 388 (D.Colo. 1993); *see also Bing v. Roadway Express, Inc.,* 485 F.2d 441, 447 (5th Cir.1973). Thus, between 23(b)(2) and 23(b)(3), the Court finds that certification under 23(b)(2) is more appropriate.

Thus, plaintiffs have satisfied Rule 23(a) and 23(b). Therefore, the *Lanier* plaintiffs' Motion for Class Certification is **GRANTED** on their state law claims.

### *CONCLUSION*

**IT IS HEREBY ORDERED** that Hughes' Motion to Dismiss plaintiffs' claims for attorneys' fees under CERCLA is **GRANTED. IT IS FURTHER ORDERED** that Hughes' Motion to Dismiss plaintiffs' claims for attorneys' fees under state law is **DENIED.**

IT IS HEREBY ORDERED that Hughes' Motion to Dismiss plaintiffs' claims for medical monitoring under CERCLA is **GRANTED. IT IS FURTHER ORDERED** that Hughes' Motion to Dismiss plaintiffs' claims for medical monitoring under state law is **DENIED.**

**IT IS HEREBY ORDERED** that the *Lanier* plaintiffs' Motion for Class Certification is **GRANTED.**

Pending and set for future hearing are Hughes' Motion to Compel plaintiffs to Comply with Discovery Stipulation I, the *Lanier* plaintiffs' Class Motion to Compel (I) and Hughes' Motion for Leave to File Third-Party Complaint.