FAIRCHILD SEMICONDUCTOR
CORPORATION, Plaintiff,

v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY; and Daniel
McGovern, in his official capacity as
Regional Administrator of Region IX,
Defendants.

No. C–90–3205 SAW.

United States District Court,
N.D. California.

July 22, 1991.

Munger, Tolles & Olson, Ronald Hausmann, Edwin V. Woodsome, Lester J. Levy, San Francisco, Cal., for plaintiff.

Gary S. Guzy, J. Steven Rogers, Lewis M. Barr, U.S. Dept. of Justice, Environmental Defense Section, Washington, D.C., for defendants.

**MEMORANDUM AND ORDER**

WEIGEL, District Judge.

The issue in this case is whether the Court may review and enforce an Administrative Order on Consent ("Consent Order") entered into by plaintiff Fairchild Semiconductor Corporation ("Fairchild") and defendant United States Environmental Protection Agency ("EPA"). The Consent Order, executed in August 1985, relates to the study of hazardous waste cleanup alternatives for the industrial Middlefield–Ellis–Whisman area of Mountain View, California. The area is a large one in which many industrial firms are now or have been located.

The Consent Order was issued by EPA pursuant to its power to abate environmental hazards under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C.A. § 9601 *et seq.* (West 1983). CERCLA was subsequently amended by the Superfund Amendments and Reauthorization Act of 1986 ("SARA" or "Superfund Amendments"), 42 U.S.C.A. § 9601 *et seq.* (West Supp.1991).

Fairchild moves for partial summary judgment on its claim that EPA arbitrarily and capriciously breached the Consent Order.[1] EPA moves for "summary judgment of dismissal" of the entire complaint on the ground that CERCLA deprives this Court of subject matter jurisdiction. In the alternative, EPA moves to dismiss portions of the complaint for failure to state a claim. Because the facts of this case and the statutory framework of CERCLA are complex, a prefatory discussion is in order.

## I. OVERVIEW OF CERCLA, AS AMENDED BY SARA

CERCLA, as amended by SARA, creates a comprehensive statutory scheme designed to address the problem of hazardous substance release. These Acts authorize EPA to undertake direct removal or

---

1. The complaint also contains causes of action for breach of the implied covenant of good faith and fair dealing, estoppel, and violation of due process under the fifth amendment.

remedial action to protect the public health or welfare, or the environment, when it determines that release of a hazardous substance poses an imminent and substantial danger. EPA may also require that the parties responsible for the release of the substance will take appropriate removal or remedial action. CERCLA's primary purpose is "the prompt cleanup of hazardous waste sites." *Barmet Aluminum Corp. v. Reilly,* 927 F.2d 289, 291 (6th Cir.1991) (citations and quotation marks omitted).

Removal refers to short-term action taken to halt the immediate risks posed by hazardous wastes. 42 U.S.C. § 9601(23). Remedial action refers to permanent remedies taken instead of or in addition to removal, including the destruction of hazardous wastes. § 9601(24); *see also Barmet,* 927 F.2d at 291; *Schalk v. Reilly,* 900 F.2d 1091, 1092 n. 1 (7th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 509, 112 L.Ed.2d 521 (1990). Removal action is taken before remedial action. During the removal action phase, a site posing a risk of hazardous waste release is studied and various cleanup options considered. § 9604(a). The ensuing site-specific study is called a Remedial Investigation/Feasibility Study ("RI/FS"). The study may be performed either by EPA or by a potentially responsible party ("PRP"), once EPA has determined that the PRP will properly perform the study. *Id.* This was also the case before the enactment of the Superfund Amendments. § 9604(a) (West 1983).

Once the RI/FS has been completed, EPA will choose the remedial action appropriate for the site. Before finalizing its choice, EPA is required to submit a proposed plan to the public for comment. § 9617(a). In connection with its choice, EPA must develop an administrative record upon which it has based its decision, includ-

ing what is known as a Record of Decision. § 9613(k).[2] If, after EPA approves a final plan, it takes any remedial action which differs in any significant respect from this plan, it is required to publish "an explanation of significant differences," which explains and justifies the changes. § 9617(c).

Pursuant to Section 106 of CERCLA, 42 U.S.C. § 9606, EPA has power to take actions and issue orders designed to abate "an imminent and substantial endangerment to the public health or welfare or the environment because of an actual or threatened release of a hazardous substance from a facility." § 9606(a). Violations of these orders may subject responsible parties to substantial fines. § 9606(b). Finally, EPA may enter into settlement agreements with PRPs in which the PRPs agree to perform some or all of the cleanup of the site. § 9622. The Superfund Amendments require that such agreements be approved by the Attorney General, be open to public comment, and ultimately be entered in the appropriate United States District Court. § 9622(d).[3]

## II. FACTS

As noted earlier, in August 1985, EPA entered into a Consent Order with Fairchild. Other parties to that Order were: Intel Corporation; Raytheon Company; the California Regional Water Quality Control Board; and the California Department of Health Services.[4] The Consent Order concerned investigation, study, and cleanup of the industrial Middlefield–Ellis–Whisman area of Mountain View, California ("MEW site"). It called for preparation of both a Remedial Investigation ("RI") and of a Feasibility Study ("FS") by the PRPs, including plaintiff, at their own expense. According to the Consent Order, the purpose

---

**2.** The purpose of the Record of Decision is to provide: (1) notice to potentially affected persons and the public and a brief analysis of the selected plan and alternatives considered; (2) a reasonable opportunity to comment and provide information regarding the plan; (3) an opportunity for a public meeting; (4) a response to comments, criticisms, and data; and (5) a statement of the basis and purpose of the selected action. § 9613(k)(2)(B).

**3.** Prior to the Superfund Amendments, there was no formal provision for settlements under CERCLA.

**4.** Intel and Raytheon are not parties to this suit. EPA has entered into a proposed consent decree with them.

of the RI was "to determine fully the nature and extent of any threat to the public health or welfare or the environment caused by the release or threatened release of hazardous substances, pollutants or contaminants" at the MEW site. Consent Order, Part II. A., at 3. The purpose of the FS was "to evaluate alternatives for the appropriate nature and extent of remedial action to prevent or mitigate the migration or the release or threatened release of hazardous substances, pollutants, or contaminants" at or from the MEW site. *Id.*, Part II. B., at 3. The Consent Order expressly stated that it was issued by EPA pursuant to enforcement authority under Section 106(a) of CERCLA, 42 U.S.C. § 9606(a).

The Consent Order set forth the procedures which would govern the performance of the RI/FS by the PRPs. It contained no suggestion of what remedial action EPA would ultimately select for the MEW site.

The final draft of the FS set forth several specific soil and groundwater "cleanup *goals*" for the PRPs to meet, to bring the site into compliance with CERCLA, 42 U.S.C. § 9621 (setting forth cleanup requirements). Feasibility Study Report, at 243. The final draft was approved by EPA in November 1988, subject to possible modification in the future. *See* Letter from EPA to George Gullage (Nov. 23, 1988). The FS noted in a few places that the desired levels of remediation may not be achievable. *See id.* at 85, 145. It further provided that "[f]inal clean up levels and times will depend upon the technical practicability of achieving the clean up goals. Technical practicability will be determined based on evaluation of performance data generated during the first five years of operation of the selected remedial actions. This evaluation will be conducted in accord-

ance with § 121(c) and (d) of CERCLA, 42 U.S.C. § .9621(c) and (d), to determine if modification of any of the selected remedial actions or the clean up goals is warranted." *Id.* at 243; *see also* § 9621(c) (providing for EPA review of hazardous waste cleanup sites every five years).

Based on the FS, EPA developed a cleanup plan for the MEW site. It issued its CERCLA Record of Decision ("ROD") in June 1989, setting forth the soil and groundwater remedial actions to be taken there. Throughout the ROD, EPA refers both to cleanup "goals," Record of Decision, at iii, iv, v, and cleanup "levels," "standards," and "enforceable limits." *Id.* at iv, 15, 20. It further noted that "[b]ecause of the anticipated length of time to achieve the cleanup goals and the uncertainty whether the cleanup goals can be achieved, both the technologies and the cleanup goals will be reassessed every 5 years." *Id.* at v.

In September 1990, EPA issued an Explanation of Significant Differences ("ESD"), pursuant to 42 U.S.C. § 9617(c). The ESD provided that "[t]he cleanup 'goals' established for both groundwater and soil contamination at the MEW Site are hereby set as final cleanup standards." ESD, at 11. The ESD clarified that what EPA had previously referred to as "cleanup goals" were actually enforceable "cleanup levels," under CERCLA, unless it had reason to invoke a statutory waiver of the required standards under Section 9621(d), which it believed it did not.[5] The ESD superseded the ROD with respect to the change from cleanup goals to cleanup levels, thereby creating enforceable obligations for the parties at the MEW site,

---

5. The ESD explained:

EPA expressed these cleanup levels as goals because it recognized that there is an uncertainty as to what actual cleanup levels will be achieved during the implementation of the remedial action. However, this uncertainty inherently exists at many Superfund sites that are implementing groundwater extraction treatment remedies or innovative treatment technologies. Accordingly, upon re-evaluation of the administrative record, EPA has

now determined that there is a sufficient basis for changing the "cleanup goals" established in the ROD to "final cleanup standards." A basis for making this change is EPA's determination that there is insufficient information at this time to invoke a waiver of statutorily required cleanup standards, pursuant to Section 121(d)(4) of CERCLA, 42 U.S.C. § 9621(d)(4).

*Id.* at 12.

including plaintiff. *See* ESD, at 14.[6]

In November 1990, after EPA and Fairchild reached an impasse in their efforts to reach a consent decree, embodying a final settlement of the parties' respective clean-up obligations, EPA issued a second Administrative Order to Fairchild and other parties, pursuant to Section 9606(a), setting forth their remedial obligations and incorporating by reference the ROD and ESD. This Order is enforceable in federal district court. *See* 42 U.S.C. § 9613(h)(2).

Fairchild maintains that this change from "goals" to "levels" constituted an arbitrary and capricious breach of the Consent Order. Apparently, it fears that it is now being held, subject to substantial penalties, to levels of remediation that it may not be able to achieve, due to the limits of current technology. It claims that EPA breached the Consent Order in three respects: First, the Consent Order provided that EPA would approve or disapprove each "technical report" within thirty days of receipt. Consent Order, Part VI. F., at 9. Fairchild contends that the FS was a "technical report," and that through the ESD, EPA disapproved the report nearly two years after its creation. Second, Fairchild insists that EPA was in breach of the Consent Order by refusing to submit to the Dispute Resolution provision found in Part XII. C. This provision requires informal negotiations between the parties to resolve a dispute arising from a formal disapproval of a technical report by the EPA. It provides for judicial review in the event the parties are unable to resolve their differences. Finally, Fairchild charges that EPA's new requirement that the PRPs meet cleanup "standards" is in violation of the National Contingency Plan, 42 U.S.C.A. § 9605 (West 1983 and Supp.1991); 40 C.F.R. § 300 *et seq.* (1990). The Consent Order expressly provided that the activities conducted pursuant to that Order "are and

shall be consistent with the National Contingency Plan." Consent Order, at 3.

## III. SUBJECT MATTER JURISDICTION

The initial question presented is the most difficult. That question is whether or not under CERCLA the Court has subject matter jurisdiction to determine whether EPA's modification of the ROD, as embodied in the ESD, was an arbitrary and capricious breach of the Consent Order or inconsistent with the National Contingency Plan. The Superfund Amendments to CERCLA narrowly circumscribe the circumstances in which federal courts may review EPA response actions. Although the Court's power to review this dispute is not free from ambiguity, both the plain language of the statute and the ample legislative history confirm EPA's contention that Fairchild's suit is premature and must be dismissed for want of subject matter jurisdiction.

The federal district courts have limited jurisdiction and thus may proceed only under a specified jurisdictional grant. *A.L. Rowan & Son, General Contractors, Inc. v. Department of Housing & Urban Development*, 611 F.2d 997, 999 (5th Cir. 1980). Moreover, the United States must first waive its sovereign immunity before a federal court may exercise its jurisdiction over an action brought against it. *Id.*

EPA contends, in its motion for "summary judgment of dismissal," [7] that CERCLA, as amended by SARA, expressly deprives this Court of subject matter jurisdiction over this dispute. The United States Supreme Court has stated that "[w]hether and to what extent a particular statute precludes judicial review is determined not only from its express language, but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved." *Block v. Community Nutrition*

---

6. The ESD did not alter EPA's obligation to evaluate the MEW site every five years. Moreover, the ESD expressly recognized that it was possible that EPA's chosen remedy would be demonstrated to be unattainable. At that time, EPA would have to reconsider its remedial decision. ESD, at 15.

7. Since EPA's motion concerns this Court's jurisdiction to entertain plaintiff's suit, the Court must treat it as a motion to dismiss. *See Studio Elec. Technicians Local 728 v. International Photographers of Motion Pictures Indus.*, 598 F.2d 551, 552 n. 2 (9th Cir.1979).

*Institute,* 467 U.S. 340, 345, 104 S.Ct. 2450, 2453–54, 81 L.Ed.2d 270 (1984).

Plaintiff concedes that the Court must first find that it has subject matter jurisdiction over the complaint before it may consider the merits. *See* Fairchild Response to Court's Letter of Inquiry, at 1 (June 19, 1991). It argues, however, that the Court has subject matter jurisdiction under both Section 113(b), 42 U.S.C. § 9613(b), and Section 122, 42 U.S.C. § 9622, of CERCLA, as amended. Each provision will be discussed in turn.

### A. CERCLA Section 113 (42 U.S.C. § 9613)

■ Section 113 of CERCLA bears the heading "Civil Proceedings." This section of the Act sets forth the basis and limits of the jurisdiction of the federal courts to entertain actions arising out of CERCLA. Its provisions are over-arching in that Section 113 is the sole section of the statute to address jurisdiction. Section 113(b), 42 U.S.C. § 9613(b), which is labelled "Jurisdiction; venue" provides in relevant part: "Except as provided in subsections (a) and (h) of this section, the United States district courts shall have exclusive original jurisdiction over all controversies arising under this chapter without regard to the citizenship of the parties or the amount in controversy." Subsection (h), enacted as part of the 1986 Superfund Amendments, retracts a large part of that broad jurisdictional grant, codifying the pre-SARA interpretation of the courts that CERCLA precludes preenforcement review of EPA remedial actions.[8] It bears the heading "Timing of review" and provides in pertinent part:

No Federal court shall have jurisdiction under Federal law other than under section 1332 of Title 28 (relating to diversity of citizenship jurisdiction) or under State law which is applicable or relevant and appropriate under section 9621 of this title (relating to cleanup standards) to review any challenges to removal or remedial action selected under section 9604 of this title, or to review any order issued under section 9606(a) of this title, in any action except one of the following:

(1) An action under section 9607 of this title to recover response costs or damages or for contribution.

(2) An action to enforce an order issued under section 9606(a) of this title or to recover a penalty for violation of such order.

(3) An action for reimbursement under section 9606(b)(2) of this title.

(4) An action under section 9659 of this title (relating to citizens suits) alleging that the removal or remedial action taken under section 9604 of this title or secured under section 9607 of this title was in violation of any requirement of this chapter. Such an action may not be brought with regard to a removal where a remedial action is to be undertaken at the site.

(5) An action under section 9607 of this title in which the United States has moved to compel a remedial action.

§ 9613(h).

The purpose of this limitation on judicial review is clear. The Superfund Amendments were enacted to ensure that EPA could respond promptly to environmental hazards. Preenforcement judicial review would foil that purpose. As the Seventh Circuit Court of Appeals noted, "challenges to the procedure employed in selecting a remedy nevertheless impact the implementation of the remedy and result in the same delays Congress sought to avoid by passage of the statute; the statute necessarily bars these challenges. The judicial review itself slows the process down." *Schalk v. Reilly,* 900 F.2d 1091, 1097 (7th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 509, 112 L.Ed.2d 521 (1990).

---

8. For a sample of pre-SARA cases dismissing CERCLA actions for lack of subject matter jurisdiction, see *Barnes v. United States District Court,* 800 F.2d 822 (9th Cir.1986); *Lone Pine Steering Committee v. United States Environmental Protection Agency,* 777 F.2d 882 (3rd Cir.1985), *cert. denied,* 476 U.S. 1115, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986); *B.R. MacKay & Sons, Inc. v. United States,* 633 F.Supp. 1290 (D.Utah 1986). *Lone Pine* was cited with approval in a Senate Report addressing the subject of preenforcement review. S.Rep. No. 11, 99th Cong., 1st Sess. 58 (1985).

Fairchild's initial contention that this action does not fall within Section 9613(h)'s broad prohibition on preenforcement judicial review is unpersuasive. Subject to the five enumerated exceptions, Section 9613(h) bars review of any challenges to removal or remedial action selected under Section 9604 and of any order issued under Section 9606(a). Yet this is precisely the type of review Fairchild seeks.

First, although Fairchild protests that it does not seek to challenge the remedial *methods* chosen by EPA, Fairchild challenges the very *object* of the remedy—whether the actions ordered by EPA must strive to meet certain *goals* or legally applicable *standards*. There is no basis for Fairchild's claim that it is *not* contesting EPA's remedial decisions. Fairchild's insistence to the contrary is belied by the complaint itself. In its prayer for relief, Fairchild seeks, among other things, an order directing EPA to withdraw the ESD. Complaint, ¶ 3, at 30; ¶ 2, at 31. Such an order would significantly alter the implementation of the remedial action chosen by EPA at the MEW site.

Although there is no case precisely on point, most courts which have considered the breadth of CERCLA's prohibition on judicial review, both pre- and post-SARA, have concluded that complaints which seek court-ordered modifications of the remedial decisions embodied in the Record of Decision are barred until remedial action is completed, unless one of the enumerated exceptions apply. *See, e.g., Alabama v. United States Environmental Protection Agency,* 871 F.2d 1548 (11th Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 538, 107 L.Ed.2d 535 (1989) (post-SARA); *Lone Pine Steering Committee v. United States Environmental Protection Agency,* 777 F.2d 882 (3rd Cir.1985) (pre-SARA), *cert. denied,* 476 U.S. 1115, 106 S.Ct. 1970, 90

L.Ed.2d 654 (1986); *Cabot Corp. v. United States Environmental Protection Agency,* 677 F.Supp. 823 (E.D.Pa.1988) (pre-SARA).[9]

Second, in order for the Court to evaluate Fairchild's suit on the merits, it would have to review the Consent Order to assess whether it had indeed been breached by EPA. Even if the Consent Order were breached by EPA's switch from "goals" to "standards," the Court would also have to ascertain whether EPA's use of term "goals" was consistent with CERCLA and the National Contingency Plan, in light of the administrative record. That Fairchild consented to the issuance of the Consent Order does not alter the fact that it was "an order issued under section 9606(a) of this title." *See* § 9613(h). Fairchild tacitly concedes this point by arguing that the Court has jurisdiction, under Section 9613(h)(2), "to enforce an order issued under section 9606(a)."

Moreover, a decision in Fairchild's favor would affect yet another administrative order issued under Section 9606(a)—namely, the coercive order issued by EPA in November 1990, which incorporates the ROD and ESD by reference. Any change to the ROD and ESD ordered by this Court would necessarily affect this second order. Fairchild contends that it is not challenging this order, yet it is with this document that EPA could enforce its "standards" requirement against Fairchild, potentially causing it to incur substantial penalties under Section 9606(b).

Granting Fairchild's request to remand this action to EPA for further negotiation between the parties, pursuant to the Consent Order's Dispute Resolution provisions, is barred by Section 9613(h). To determine whether the instant dispute is governed by the Dispute Resolution provision set out in Part XII. C. of the Consent Order, the Court would have to decide whether EPA's

9. Representative Glickman agreed. In interpreting the Conference Committee's version of the Superfund Amendments, he explained that Section 9613(h)

    is designed to preclude lawsuits by any person concerning particular segments of the response action, as delineated in separate records of decision, until those segments of

the response have been constructed. Completion of all the work set out in a particular record of decision marks the first opportunity at which review of that portion of the response action can occur.

132 Cong.Rec. 29,736 (1986) (statement of Rep. Glickman).

alteration of the selected remedy in the ESD constituted a "disapproval" of a "technical report." This would involve a challenge to EPA's remedial action. Even if EPA did disapprove a technical report within the meaning of the Consent Order, the Court would have to consider whether such breach was privileged by virtue of being authorized, or even required, by CERCLA. Such determinations are precluded by the express language of Section 9613(h), unless and until one of the five enumerated exceptions applies.

### B. The Applicability of Section 9613(h)(2) to this Action

■ The applicability of Section 9613(h) to this action having been established, the Court must proceed to determine whether any of the enumerated exceptions to its bar on judicial review apply. Fairchild urges that the exception found in subsection (h)(2) provides the Court with subject matter jurisdiction. That exception permits judicial review of an action "to enforce an order issued under section 9606(a) of this title or to recover a penalty for violation of such order." Fairchild contends that it is seeking to enforce the Consent Order; hence, this Court has jurisdiction.

■ Although the statutory language does not explicitly specify *who* 's attempted enforcement of a Section 9606(a) order would bring an action within subsection (h)(2), an examination of both the structure and legislative history of CERCLA demonstrates that only enforcement actions brought by *EPA* fall within the exception.

First, the exception must be considered within the context of the entire Act. Subsection (h)(2) confers jurisdiction in "[a]n action to enforce an order issued under section 9606(a) of this title or to recover a penalty for violation of such order." A fair reading of this language shows that jurisdiction exists only when the *government* brings an action to enforce a Section 9606(a) order or to recover a penalty for violation of such order. This interpretation is quite sensible in view of the fact that only the government may issue orders to abate an environmental hazard, under Sec-

tion 9606(a), and only the government may recover penalties for violation of such orders, under Section 9606(b).

Moreover, Section 9606(a) orders are a common means by which EPA facilitates cleanup of hazardous waste sites nationwide. Fairchild's proposed interpretation of the exception in subsection (h)(2) would create a critical loophole in Congress's restrictions on preenforcement judicial review. It would allow review of nearly all such orders under the guise of "enforcement" by PRPs.

Finally, the legislative history is replete with references to the exception to the rule against preenforcement review for *government* enforcement or abatement actions. For example, the House Judiciary Committee reaffirmed that "in the absence of a *government enforcement action*, judicial review of the selection of a response action should generally be postponed until after the response action is taken." H.R.Rep. No. 253(III), 99th Cong., 2d Sess. 22, *reprinted in* 1986 U.S.Code Cong. & Admin.News 2835, 3045 (emphasis added). Similarly, the House Committee on Energy and Commerce noted that one exception to the bar on judicial review applies when there is a "filing of an action *by EPA* to either enforce an order issued under sections 104 or 106 of CERCLA or to collect a penalty for violation of such order." H.R.Rep. No. 253(I), 99th Cong., 2d Sess. 266, *reprinted in* 1986 U.S.Code Cong. & Admin.News 2941 (emphasis added). The statute would limit "court challenges to the point in time when *the agency* has decided to enforce the liability of such private responsible parties." *Id.* (emphasis added).

One Senate Report also states that judicial review may be obtained "at the time the *government* seeks cost recovery or acts to enforce the order and collect penalties for noncompliance. This amendment clarifies and confirms that response actions and orders are not subject to judicial review prior to that time." S.Rep. No. 11, 99th Cong., 1st Sess. 58 (1985) (emphasis added). Finally, the Conference Report states that it adopted both the House and Senate proposed amendments allowing for

judicial review over "suits for abatement under section 106(a)." H.R.Conf.Rep. No. 962, 99th Cong., 2d Sess. 221–24, *reprinted in* 1986 U.S.Code Cong. & Admin.News 3314–17. Only EPA may abate environmental hazards. *See* § 9606(a).[10]

Thus the exception to the CERCLA bar on judicial review for actions to enforce Section 9606(a) orders does not apply to this dispute, since Fairchild, not EPA, seeks to enforce the Consent Order. Fairchild seeks to avoid this result by characterizing this controversy as a simple breach of contract suit. If there is any remaining ambiguity regarding the application of the judicial review provisions to the instant action, that ambiguity is resolved by reference to the ample legislative history documenting Congress's determination to postpone judicial review of most actions arising under CERCLA until the selected remedial action has been completed or until EPA seeks to enforce its administrative orders or compel remedial action. The comprehensive scope of the preenforcement review bar is evidenced by several statements made by key supporters of the Superfund Amendments:

> The preenforcement review provision adopted by the conference is one of the most significant provisions developed during the reauthorization process....
>
> It is my understanding that the provision confirms and builds upon existing case law. In particular, the timing of review section ensures that Government and private cleanup resources will be directed toward mitigation, not litigation. The section is designed to preclude piecemeal review and excessive delay of cleanup. Interested parties will be able to participate early in a more regularized administrative process instead of making premature challenges in court to remedy selection or liability.

The timing of review section is intended to be comprehensive. It covers all lawsuits, under any authority, concerning the response actions that are performed by EPA and other Federal agencies, by States pursuant to a cooperation agreement, and by private parties pursuant to an agreement with the Federal Government. The section also covers all issues that could be construed as a challenge to the response, and limits those challenges to the opportunities specifically set forth in the section.

132 Cong.Rec. 28,441 (1986) (statement of Sen. Thurmond). Representative Glickman seconded Senator Thurmond's interpretation. 132 Cong.Rec. 29,735–36 (1986) (statement of Rep. Glickman) (describing the scope of preenforcement review provisions in nearly identical language).

Fairchild nevertheless contends that this dispute is not a "preenforcement review case," because its pursuit of this action is not impeding cleanup and because there is no danger of piecemeal judicial review because once decided, the issues here will not resurface. The point is not well-taken. For the reasons set forth above, this action falls squarely within the ambit of Section 9613(h)'s prohibition on review. Moreover, although Congress enacted the judicial review provisions in part out of fear that litigation would stall cleanup efforts, it did not invite the federal courts to embark on a case-by-case analysis of whether particular disputes would in fact impede cleanup. More than one court has rejected the argument that judicial review should proceed because it would not actually delay cleanup. *See, e.g., Voluntary Purchasing Groups, Inc. v. Reilly,* 889 F.2d 1380, 1390 (5th Cir.1989) (even though judicial review would not delay cleanup, it would force the EPA to engage in "piecemeal" litigation); *Lone Pine Steering Committee v. United States Environmental Protection Agency,* 777 F.2d 882, 886 (3rd Cir.1985) (the legal

---

**10.** Although no court has squarely addressed the issue, a few courts have noted in *dicta* that the enforcement exception to Section 9613(h) applies only to EPA enforcement actions. *See, e.g., Koppers Indus., Inc. v. United States Environmental Protection Agency,* 902 F.2d 756, 759 (9th Cir.1990); *Voluntary Purchasing Groups,*

*Inc. v. Reilly,* 889 F.2d 1380, 1389 (5th Cir.1989); *Browning–Ferris Indus. South Jersey, Inc. v. Muszynski,* No. 89 CIV 1929 (LLS), 1989 WL 51916, at *3, 1989 U.S.Dist.Lexis 5186, (S.D.N.Y. May 10, 1989), *aff'd on other grounds,* 899 F.2d 151 (2d Cir.1990).

question of the availability of judicial review should not depend on the peculiar facts of each case), *cert. denied,* 476 U.S. 1115, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986).

Despite Fairchild's claims to the contrary, this action does involve piecemeal review. Suits such as this, if allowed, would force EPA to use its resources to protect its right to implement its chosen remedy. *Voluntary,* 889 F.2d at 1390. "Judicial review itself slows the process down." *Schalk v. Reilly,* 900 F.2d 1091, 1097 (7th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 509, 112 L.Ed.2d 521 (1990). Moreover, the very relief sought by Fairchild demonstrates beyond doubt the likelihood of persistent judicial review in this case. Fairchild requests that the Court remand this action to EPA for proceedings consistent with the Consent Order's Dispute Resolution provisions. Part XII. C. of the Consent Order provides for judicial review of a dispute involving EPA's disapproval of a technical report, if EPA and Fairchild are unable to informally resolve their dispute. Thus, if after a remand, EPA continued to conclude that its change to the Record of Decision was mandated by CERCLA, the action would return to federal court for further judicial review. Moreover, the relief ultimately sought by Fairchild is a court order requiring EPA to agree to a final consent decree which would provide for judicial review of EPA's periodic evaluations of the technical practicability of achieving the selected remedial standards. Complaint, ¶ 3, at 31. Such relief might well result in judicial review of EPA remedial decisions every five years— the interval at which EPA is required by CERCLA to review the selected remedial action at the MEW site. *See* § 9621(c). Hence a decision on the merits by this Court might well engender continual judicial review, in contravention of the plain meaning and spirit of the Superfund Amendments.

### C. The Applicability of Section 9622(d) to this Action

■ Fairchild contends that even if judicial review is precluded under Section 9613(h), CERCLA Section 122(d)(3), 42 U.S.C. § 9622(d)(3), affords a separate basis for subject matter jurisdiction. Section 9622(d)(3) provides:

> Whenever the President enters into an agreement under this section with any potentially responsible party with respect to action under section 9604(b) of the title, the President shall issue an order or enter into a decree setting forth the obligations of such party. The United States district court for the district in which the release or threatened release occurs may enforce such order or decree.

This subsection is part of an elaborate set of procedures enacted by Congress in the 1986 Superfund Amendments facilitating the settlement of cleanup actions between EPA and PRPs. Section 9622(d) requires that settlement agreements be formally approved by the Attorney General and entered in the appropriate district court as consent decrees. § 9622(d)(1)(A). Such agreements must also be made available for public comment before entered to ensure that they are in the public interest. § 9622(d)(2)(B). The Consent Order at issue here was executed before the enactment of Section 9622. Thus, the short answer to Fairchild's invocation of Section 9622 as a jurisdictional grant is that Section 9622 does not apply to this preliminary Consent Order. It is simply not an agreement "under this section." § 9622(d)(3).

Furthermore, Section 9622(d)(3) refers to agreements under Section 9604(b) of CERCLA. The Consent Order makes no reference to that provision, which involves "investigations, monitoring, surveys, testing, and other information gathering" in order "to identify the existence and extent of the release or threat thereof, the source and nature of the hazardous substances, pollutants or contaminants involved, and the extent of danger to the public health or welfare or to the environment." § 9604(b). Rather, the Consent Order sets forth the parties' respective obligations concerning the performance of the RI/FS. The performance of remedial investigations and feasibility studies is expressly covered under Section 9604*(a),* not (b). *See* § 9604(a). Therefore, notwithstanding congressional

policy favoring CERCLA settlements, Section 9622(d)(3) on its face does not apply to this Consent Order.

Even if the Consent Order were construed as a Section 9622 agreement, Section 9622(d) would still not confer jurisdiction over this matter. The Court's power to review EPA remedial actions under that section is subject to Section 9613's timing of review provisions. Even Fairchild concedes that Section 122 did not create subject matter jurisdiction over agreements where none existed before. Fairchild Response to Court's Letter of Inquiry, at 4 (June 19, 1991). Rather, Fairchild claims that Section 122 codified existing law and policy regarding such agreements that were already enforceable under Section 113(b). *Id.* As discussed above, Section 113 precludes judicial review of this action at this time.

It is clear from the structure of the Act and the legislative history that Section 9613's preenforcement review provisions govern all actions arising out of CERCLA, and nothing in the Act or its history suggests that Section 9622 carves out an exception to the jurisdictional limits imposed by Section 9613. While Section 9613 is headed "Civil Proceedings," and provides a specific jurisdictional grant, the words "jurisdiction" or "judicial review" are not even mentioned in Section 9622. Section 9622(d)(3) is more likely a venue provision, than one conferring jurisdiction.

Finally, even if this Court could exercise jurisdiction over some portion of the complaint pursuant to Section 9622(d)(3), Fairchild could not obtain the relief it seeks. The Court does not have power to adjudicate issues involving EPA's chosen remedial action. This conclusion is confirmed by analogy to the observations made by several Congressmen that even where the Court was expressly empowered to enforce EPA access orders under Section 104(e), 42 U.S.C. § 9604(e), there would still be no jurisdiction at that time to review any EPA response action. *See, e.g.,* 132 Cong.Rec. 28,441 (1986) (statement of Sen. Thur-

mond); 132 Cong.Rec. 29,736 (1986) (statement of Rep. Glickman) (same).

## IV. CONCLUSION

For the reasons stated above, this Court lacks subject matter jurisdiction over this dispute under either Sections 9613(b) or 9622(d). Fairchild has offered no other basis for the exercise of jurisdiction here. The Court must therefore dismiss the complaint.

The Court observes that this result comports with the requirements of due process. As the United States Supreme Court has held, "[i]t is sufficient, where only property rights are concerned, that there is at some stage an opportunity for a hearing and a judicial determination." *Hodel v. Virginia Surface Mining & Reclamation Ass'n,* 452 U.S. 264, 303, 101 S.Ct. 2352, 2374, 69 L.Ed.2d 1 (1981) (quoting *Ewing v. Mytinger & Casselberry, Inc.,* 339 U.S. 594, 599, 70 S.Ct. 870, 872, 94 L.Ed. 1088 (1950)). Fairchild will be able to obtain judicial review of its dispute under several different circumstances: First, if it refuses or is unable to comply with EPA's Section 9606(a) order, EPA may bring an enforcement action pursuant to Section 9606(b). Judicial review would be proper under Section 9613(h)(2). Second, EPA may institute an action to recover response costs or damages pursuant to Section 9607. Judicial review would then be proper under Section 9613(h)(1). Third, Fairchild may comply with the order and when remediation is complete, seek reimbursement of costs incurred as a result of arbitrary and capricious decisions by EPA, pursuant to Section 9606(b)(2). Judicial review could then be obtained under Section 9613(h)(3). Or, in the event that EPA moved to compel a remedial action, Fairchild could obtain judicial review, pursuant to Section 9613(h)(5).

These are options for review available for all potentially responsible parties under CERCLA. The Court declines to rewrite CERCLA to grant Fairchild an additional option.[11]

---

11. Several courts have held that CERCLA's judicial review restrictions do not violate due pro-

cess. *See, e.g., Barmet Aluminum Corp. v. Reilly,* 927 F.2d 289, 294–96 (6th Cir.1991); *Schalk*

Accordingly,

IT IS HEREBY ORDERED that the complaint is DISMISSED for lack of subject matter jurisdiction. All remaining motions are DENIED.

v. Reilly, 900 F.2d 1091, 1097–98 (7th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 509, 112 L.Ed.2d 521 (1990); *Dickerson v. Administrator, Environmental Protection Agency,* 834 F.2d 974, 978 n. 7 (11th Cir.1987); *Cabot Corp. v. United States Environmental Protection Agency,* 677 F.Supp. 823, 828–29 (E.D.Pa.1988).