984 F.2d 283
 35 ERC 2028, 61 USLW 2441, 23 Envtl.
L. Rep. 20,546
 FAIRCHILD SEMICONDUCTOR CORPORATION, Plaintiff-Appellant,
v.
U.S. ENVIRONMENTAL PROTECTION AGENCY; Daniel McGovern, in
his official capacity as Regional Administrator of
Region IX, Defendants-Appellees.
 No. 91-16435.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 5, 1992.
Decided Jan. 15, 1993.
 
 Carolyn B. Kuhl, Munger, Tolles & Olson, Los Angeles, CA, for plaintiff-appellant.
 J. Carol Williams, U.S. Dept. of Justice, Washington, DC, for defendants-appellees.
 Appeal from the United States District Court for the Northern District of California.
 Before: GOODWIN, FARRIS, and PREGERSON, Circuit Judges.
 PREGERSON, Circuit Judge:
 
 
 1
 Fairchild Semiconductor Corporation ("Fairchild") seeks declaratory relief and enforcement of a Consent Order issued under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9606. The district court dismissed Fairchild's complaint for want of subject matter jurisdiction under 42 U.S.C. § 9613(h) ("Timing of Review"). We affirm.
 
 BACKGROUND
 
 2
 On August 15, 1985, Fairchild, Raytheon Company, and Intel Corporation (collectively the "companies") and the United States Environmental Protection Agency (the "EPA") executed a written agreement in the form of an Administrative Order on Consent ("Consent Order") under CERCLA, 42 U.S.C. § 9606.[1] Under the terms of the Consent Order, the companies would fund and perform an investigation of environmental contamination at a site in Mountain View, California (the "site"). In exchange for taking financial responsibility for the investigation, the companies were permitted to develop the studies on which the selected remedies would be based and to recommend a remedial program for EPA approval. The Consent Order also provided that the EPA would notify the companies of its disapproval of any technical report within 30 days of receipt, and established a dispute resolution procedure to address such a contingency.
 
 
 3
 The companies' final proposed remedial plan was approved by the EPA in November 1988, subject to possible future modification. After public review and comment, the EPA adopted a final cleanup plan consistent with the companies' recommendations. The EPA published this plan as part of the final Record of Decision[2] on the site. Relevant to this action, the plan designated cleanup "goals" for groundwater. In addition, the Record of Decision noted that "[b]ecause of the anticipated length of time to achieve the cleanup goals and the uncertainty whether cleanup goals can be achieved, both the technologies and cleanup goals will be reassessed every five years."
 
 
 4
 The parties then began negotiations for a final settlement as to their respective cleanup obligations. During these negotiations, the EPA refused Fairchild's proposals to include periodic reevaluation procedures in the final consent decree. Fairchild then refused to consent to an order that did not include such procedures.
 
 
 5
 In September 1990, EPA issued an Explanation of Significant Differences under 42 U.S.C. § 9617. This had the effect of amending the Record of Decision. The amendment changed "cleanup 'goals' " to "final cleanup 'standards' " and nullified the provision that final cleanup levels would depend on technical practicability. The amendment did note that if data demonstrates the standards are unattainable, the EPA may reconsider its remedial selection.
 
 
 6
 On November 8, 1990, Fairchild filed suit against the EPA in district court on breach of contract, estoppel, and due process theories. In essence, Fairchild complains that the EPA changed the groundwater cleanup "goals" to cleanup "standards" and eliminated periodic reevaluation procedures in violation of procedures set out in the Consent Order, and despite EPA's oral representations to the contrary. The complaint seeks withdrawal of the Explanation of Significant Differences (which would revoke EPA's selection of a remedial standard) and an order requiring the EPA to negotiate in good faith for periodic evaluation of the technical practicability of achieving the selected remedial goals.
 
 
 7
 On the EPA's motion, the district court dismissed the suit for lack of jurisdiction, citing 42 U.S.C. § 9613(h) ("timing of review") as a jurisdictional bar. Fairchild Semiconductor Corp. v. United States Environmental Protection Agency, 769 F.Supp. 1553, 1563-64 (N.D.Cal.1991). Fairchild timely appealed, and this court has jurisdiction under 28 U.S.C. § 1291.
 
 STANDARD OF REVIEW
 
 8
 On appeal, Fairchild argues that the district court had subject matter jurisdiction under 42 U.S.C. § 9622(d)(3), and that an action under this section is not subject to the timing of review restriction of 42 U.S.C. § 9613(h).
 
 
 9
 We review de novo dismissal of a complaint for lack of subject matter jurisdiction. See Montes v. Thornburgh, 919 F.2d 531, 534 (9th Cir.1990).
 
 DISCUSSION
 A. CERCLA Section 113 (42 U.S.C. § 9613)
 
 10
 Before the district court, Fairchild argued that its action against the EPA for declaratory and injunctive relief was not barred by the "timing of review" restrictions of § 9613(h).
 
 
 11
 Section 113 of CERCLA, entitled "Civil Proceedings," sets forth the jurisdictional basis and limits of federal courts to adjudicate actions arising out of CERCLA. Its provisions are over-arching in that § 9613 is the sole section of the statute to address jurisdiction.
 
 
 12
 Subsection (b) to § 9613, entitled "Jurisdiction; venue," grants to federal courts exclusive federal jurisdiction over actions arising out of CERCLA. In relevant part, that subsection provides that "[e]xcept as provided in subsections (a) and (h) of this section, the United States district courts shall have exclusive original jurisdiction over all controversies arising under this chapter, without regard to the citizenship of the parties or the amount in controversy." § 9613(b).
 
 
 13
 Subsection (h) of § 9613, enacted as part of the Superfund Amendments of 1986 ("1986 amendments"), retracts a large part of that broad jurisdictional grant by codifying the pre-amendment, judicially developed bar to pre-enforcement review of EPA remedial actions.[3] Subsection (h), in relevant part, provides:
 
 
 14
 (h) Timing of review
 
 
 15
 No Federal court shall have jurisdiction under Federal law ... to review any challenges to removal or remedial action selected under section 9604 of this title, or to review any order issued under section 9606(a) of this title, in any action except one of the following:
 
 
 16
 (1) An action under section 9607 of this title to recover response costs or damages or for contribution.
 
 
 17
 (2) An action to enforce an order issued under section 9606(a) of this title or to recover a penalty for violation of such order.
 
 
 18
 (3) An action for reimbursement under section 9606(b)(2) of this title.
 
 
 19
 (4) An action under section 9659 of this title (relating to citizens suits) alleging that the removal or remedial action taken under section 9604 of this title or secured under section 9606 of this title was in violation of any requirement of this chapter. Such an action may not be brought with regard to a removal where a remedial action is to be undertaken at the site.
 
 
 20
 (5) An action under section 9606 of this title in which the United States has moved to compel a remedial action.
 
 
 21
 The district court correctly noted that the purpose of this limitation on judicial review is to ensure that EPA can respond promptly to environmental hazards. 769 F.Supp. at 1558. In addition, the court correctly found that Fairchild's action does not fall into one of the exceptions enumerated in § 9613(h) and therefore is barred by that subsection.
 
 
 22
 Fairchild does not challenge this ruling on appeal.
 
 
 23
 B. CERCLA Section 122(d)(3) (42 U.S.C. § 9622(d)(3))
 
 
 24
 Fairchild seeks to avoid the jurisdictional bar of § 9613(h) by establishing an independent basis for subject matter jurisdiction under § 9622(d)(3).
 
 
 25
 Section 9622 was enacted as part of the 1986 amendments. In all, it establishes an elaborate set of procedures designed to encourage, review, and enforce EPA settlements with potentially responsible parties. The relevant portion of § 9622(d)(3) reads as follows:
 
 
 26
 § 9622. Settlements
 
 
 27
 (d) Enforcement
 
 
 28
 . . . . .
 
 
 29
 (3) 9604(b) agreements
 
 
 30
 Whenever the President enters into an agreement under this section with any potentially responsible party with respect to action under section 9604(b) of this title, the President shall issue an order or enter into a decree setting forth the obligations of such party. The United States district court for the district in which the release or threatened release [of a hazardous substance] occurs may enforce such order or decree.
 
 
 31
 As the EPA concedes, the district court erred in finding that the Consent Order is not an agreement "with respect to an action under section 9604(b)." 769 F.Supp. at 1562. The investigative and planning work embodied in the Consent Order falls squarely within the activities enumerated in § 9604(b).
 
 
 32
 Nonetheless, the court correctly concluded that § 9622(d)(3) does not grant subject matter jurisdiction over the Fairchild action.
 
 
 33
 As the district court first noted, the Consent Order cannot be "an agreement under" § 9622, because this section did not exist when the Consent Order was executed. Section 9622 established a number of new procedures and restrictions with respect to settlement agreements. As these procedures did not exist when the Consent Order was executed, they did not govern its creation. As such, the Consent Order cannot be "an agreement under" § 9622.
 
 
 34
 We also reject Fairchild's contention that § 9622(d)(3) itself defines "an agreement under" that subsection as any agreement "under section 9604(b)." Read in its totality, § 9622(d)(3) applies only to an agreement both "under this section" i.e., under § 9622, and "under section 9604(b)." Thus, it is insufficient that the Consent Order be "with respect to action under section 9604(b)"--Fairchild must also establish that the Consent Order is "an agreement under" § 9622. We have determined that the Consent Order is not an agreement under § 9622 because of when it was executed; therefore Fairchild cannot establish that § 9622(d)(3) governs its enforcement.
 
 
 35
 In addition, the express language of § 9622(d)(3) authorizes enforcement of "an order or ... decree setting forth the obligations of [a potentially responsible] party." This subsection does not provide that an order or decree under the section must set forth the obligations of the EPA. Thus, by its terms, this section only authorizes enforcement of a potentially responsible party's obligations under an order or decree. In this action, Fairchild seeks to enforce the EPA's obligations under the Consent Order. As such, this action "to enforce" the Consent Order is not authorized by § 9622(d)(3).
 
 
 36
 Moreover, read in the context of the entire act, § 9622(d)(3) fairly cannot be characterized as a jurisdictional provision. Section 9613, entitled "Civil Proceedings," sets out detailed parameters on jurisdiction, limitations of actions, service of process, and scope of judicial review. In contrast, § 9622(d)(3) does not even mention the words "jurisdiction" or "judicial review." A careful reading of the last sentence of § 9622(d)(3) reveals that it is intended to limit venue in an appropriate enforcement action to the district in which the "release or threatened release occurs."
 
 
 37
 Finally, even if § 9622(d)(3) did create a separate jurisdictional basis, Fairchild's action would be barred by § 9613(h). It is clear from the structure of the Act and the legislative history that § 9613's pre-enforcement review provision governs all actions arising out of CERCLA. Section 9613(h) expressly bars "any challenges to removal or remedial action selected under section 9604" or "review [of] any order issued under section 9606(a)." § 9613(h) (emphasis added). As the Consent Order is expressly issued under § 9606(a), it cannot be reviewed under any other section of CERCLA.
 
 
 38
 In addition, nothing in the legislative history or structure of the Act suggests that § 9622 carves out an exception to the jurisdictional limits imposed by § 9613(h). The bar to pre-enforcement review
 
 
 39
 expressly recognize[s] that pre-enforcement review would be a significant obstacle to the implementation of response actions and the use of administrative orders. Pre-enforcement review would lead to considerable delay in providing cleanups, would increase response costs, and would discourage settlements and voluntary cleanups.
 
 
 40
 S.Rep. No. 11, 99th Cong., 1st Sess. 58 (1985) (emphasis added). Pre-enforcement "challenges to the procedure employed in selecting a remedy nevertheless impact the implementation of the remedy and result in the same delays Congress sought to avoid by passage of the statute...." Schalk v. Reilly, 900 F.2d 1091, 1097 (7th Cir.) (affirming dismissal for lack of subject matter jurisdiction over challenge to investigative activities), cert. denied, 498 U.S. 981, 111 S.Ct. 509, 112 L.Ed.2d 521 (1990). Thus, there is no reason to read § 9622(d)(3) to permit challenges to Consent Orders governing investigation where such challenges would create the very problems the pre-enforcement bar rule seeks to avoid.
 
 C. Due Process
 
 41
 Finally, Fairchild argues that an interpretation of the 1986 amendments that precludes enforcement of Fairchild's "rights" under the Consent Order would violate substantive and procedural due process.
 
 
 42
 First, Fairchild contends that retroactive legislation violates substantive due process where it abrogates vested rights and where the affected party could have taken steps to avoid that result had it known of the legislation. We need not reach this issue, however, because the district court did not apply § 9613(h) retroactively. The issue before the district court was not whether it had jurisdiction over the 1985 Consent Order, but rather over the action filed by Fairchild in 1990.
 
 
 43
 In addition, even if application of § 9613(h) could be characterized as "retroactive" in this case, Fairchild's argument is still without merit. As noted above, section 9613(h) merely codified pre-amendment decisional law barring pre-enforcement challenges to remedies selected by the EPA. See, e.g., Barnes, 800 F.2d at 822.
 
 
 44
 Second, Fairchild contends that application of § 9613(h) to bar enforcement of the Consent Order would violate Fairchild's procedural due process rights. " 'It is sufficient [under the Due Process Clause], where only property rights are concerned, that there is at some stage an opportunity for a hearing and a judicial determination.' " Hodel v. Virginia Surface Mining & Reclamation Ass'n, 452 U.S. 264, 303, 101 S.Ct. 2352, 2374, 69 L.Ed.2d 1 (1981) (quoting Ewing v. Mytinger & Casselberry, Inc., 339 U.S. 594, 599, 70 S.Ct. 870, 873, 94 L.Ed. 1088 (1950)).
 
 
 45
 As the district court observed, Fairchild retains several options to secure judicial review of its dispute under the exceptions to § 9613(h). As such, the bar to pre-enforcement challenges does not violate procedural due process. This is also the conclusion of the majority of other courts that have addressed this issue. See, e.g., Barmet Aluminum Corp. v. Reilly, 927 F.2d 289, 294-96 (6th Cir.1991); Schalk, 900 F.2d at 1097-98; Dickerson v. Administrator, Environmental Protection Agency, 834 F.2d 974, 978 n. 7 (11th Cir.1987). But cf. Reardon v. United States, 947 F.2d 1509 (1st Cir.1991) (application of § 9613(h) to bar review of EPA imposition of lien under § 9607(l ) violates procedural due process).
 
 
 46
 AFFIRMED.
 
 
 
 [1]
 Unless otherwise indicated, all statutory citations are to Title 42, United States Code
 
 
 [2]
 CERCLA requires EPA to issue a Record of Decision explaining the basis and purpose of the selected action. § 9613(k)(2)(B)
 
 
 [3]
 See, e.g., Barnes v. United States District Court, 800 F.2d 822 (9th Cir.1986) (per curiam) (granting petition for writ of mandate to dismiss an action involving pre-enforcement review of EPA orders); Wheaton Indus. v. United States Environmental Protection Agency, 781 F.2d 354, 356 (3d Cir.1986) (affirming dismissal of a pre-enforcement action to compel the EPA to permit a potentially responsible party to conduct a site investigation); J.V. Peters & Co., Inc. v. Administrator, EPA, 767 F.2d 263, 265 (6th Cir.1985) (affirming dismissal of an action to enjoin EPA cleanup activities so as to permit private parties a hearing on their liability)