999 F.2d 1212
 37 ERC 1630, 23 Envtl. L. Rep. 21,280
 ARKANSAS PEACE CENTER; Environmental Health Association of
Arkansas; Jacksonville Mothers' and Children's Defense
Fund; Vietnam Veterans of America, Arkansas State Chapter;
Mothers Air Watch, Plaintiffs-Appellees,
v.
ARKANSAS DEPARTMENT OF POLLUTION CONTROL AND ECOLOGY,
Randall Mathis, Director; Defendant,
United States Environmental Protection Agency, Carol
Browner, Administrator; Defendant-Appellant,
Vertac Site Contractors; Arkansas Attorney General, Defendant.
ARKANSAS PEACE CENTER; Environmental Health Association of
Arkansas; Jacksonville Mothers' and Children's Defense
Fund; Vietnam Veterans of America, Arkansas State Chapter;
Mothers Air Watch, Plaintiffs-Appellees,
v.
ARKANSAS DEPARTMENT OF POLLUTION CONTROL AND ECOLOGY,
Randall Mathis, Director; United States
Environmental Protection Agency, Carol
Browner, Administrator; Defendant,
Vertac Site Contractors; Defendant-Appellant,
Arkansas Attorney General, Defendant.
ARKANSAS PEACE CENTER; Environmental Health Association of
Arkansas; Jacksonville Mothers' and Children's Defense
Fund; Vietnam Veterans of America, Arkansas State Chapter;
Mothers Air Watch, Plaintiffs-Appellees,
v.
ARKANSAS DEPARTMENT OF POLLUTION CONTROL AND ECOLOGY,
Randall Mathis, Director; Defendant-Appellant,
United States Environmental Protection Agency, Carol
Browner, Administrator; Vertac Site Contractors;
Arkansas Attorney General, Defendants.
 Nos. 93-1720, 93-1765 and 93-1769.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 7, 1993.
Decided July 14, 1993.
Rehearing and Suggestion for Rehearing En Banc Denied Aug. 30, 1993.
 
 David C. Shilton, Dept. of Justice, Washington, DC, argued for the EPA.
 Daniel Dunn, Denver, CO, argued, for Vertac; Myles E. Flint, John A. Bryson, Ronald Spritzer and Alice Mattice, Washington, DC, on the brief.
 Mick G. Harrison, Washington, DC, argued (Richard E. Condit, Washington, DC, and Gregory Ferguson, Little Rock, AR, on the brief), for plaintiffs-appellees.
 Before McMILLIAN, JOHN R. GIBSON, and WOLLMAN, Circuit Judges.
 JOHN R. GIBSON, Circuit Judge.
 
 
 1
 The Environmental Protection Agency, The Arkansas Department of Pollution Control and Ecology, and Vertac Site Contractors appeal from a preliminary injunction entered on March 17, 1993, prohibiting Vertac Site Contractors from incinerating any drummed wastes. We reverse the grant of a preliminary injunction, and remand with directions to dismiss the case for lack of subject matter jurisdiction.
 
 
 2
 A variety of companies operated the Vertac site[1] as a herbicide and pesticide production facility from 1948 to 1987. As part of the manufacturing process, the companies produced wastes containing dioxin, put the waste in drums, and stored it at the site. In 1987, the last manufacturer abandoned the site, leaving about 28,000 drums of two types of dioxin contaminated herbicide waste, 2,4-D waste ("D waste") and 2,4,5-T waste ("T waste"). The EPA initiated an immediate removal action under The Comprehensive Environmental Response, Compensation, and Liability Act of 1980.[2] The EPA overpacked the drums and placed them in temporary storage to mitigate hazards the deteriorating drums posed.
 
 
 3
 The Arkansas Department of Pollution Control and Ecology negotiated and signed a contract for the incineration of the drummed wastes with MRK, Inc. on July 11, 1989. MRK subsequently assigned the contract to Vertac Site Contractors, a joint venture comprised of MRK and MK Environmental Services, to conduct the incineration activities. To pay for the project, the State used money from a trust fund created as a result of litigation against the manufacturer by the United States.
 
 
 4
 The EPA conducted an Engineering Evaluation/Cost Analysis for the site, and determined that it would assist the State in the incineration of the drums by maintaining the drummed waste, conducting offsite air monitoring around the site, handling and transporting the drums for incineration, and disposing of the incinerator ash.
 
 
 5
 To burn the waste, Vertac built a rotating kiln incinerator. On January 2, 1992, the Arkansas Department of Pollution Control and Ecology certified that Vertac had demonstrated its ability to meet state and federal regulatory requirements, but imposed numerous conditions regarding the incinerator's operation. Of significance to this case is EPA regulation 40 C.F.R. § 264.343(a)(2) (1992), which requires that an incinerator burning certain hazardous wastes (including dioxin) achieve a destruction and removal efficiency (DRE) of 99.9999% (the "six nines" requirement), with the performance to be demonstrated on surrogate constituents more difficult to incinerate than dioxin.[3]
 
 
 6
 Greenpeace and the National Toxins Campaign prepared a report criticizing the State's approval of the incinerator and the EPA's air monitoring. The EPA Region VI reviewed this report, and told the Arkansas Department of Pollution Control and Ecology that Vertac complied with the six nines DRE requirement. In so concluding, the EPA relied on the results of three trial burns that used a compound that is more difficult to destroy than dioxin. The Arkansas Department of Pollution Control and Ecology, in consultation with the EPA, imposed carbon monoxide and hydrocarbon emission limits to minimize emissions from the incinerator. The EPA has since conducted continuous air quality monitoring at the site during all times when hazardous wastes have been incinerated. The EPA also prepared a risk assessment utilizing the air monitoring data, and concluded that the excess probability of cancer associated with the incineration of dioxin was within the acceptable range.
 
 
 7
 On September 28, 1992, the EPA Regional Administrator for EPA Region VI requested approval of a federal removal action and an exemption from the statutory $2,000,000 ceiling increase and one year time limit for removal actions under CERCLA, 42 U.S.C. § 9604(c)(1)(C). Because the state's trust funds were insufficient to complete the incineration, the Regional Administrator determined that an immediate federal removal action was necessary to complete the incineration. The memorandum documented that CERCLA section 104(c)(1)(C), which authorizes spending over the $2,000,000 limit, covered the activity. 42 U.S.C. § 9604(c)(1)(C). The memorandum emphasized in several statements the risk of exposure to nearby populations by the threat of release, fire, or explosion should the wastes not be incinerated.
 
 
 8
 On October 28, 1992, the Arkansas Peace Center and other groups[4] filed a complaint and a motion for a temporary restraining order and preliminary injunction seeking to enjoin the State, the EPA, and Vertac from incinerating the drummed waste at the site, alleging that Vertac failed to demonstrate a six nines DRE for dioxin. Two days later, the district court granted in part the groups' motion for a temporary restraining order. Arkansas Peace Ctr. v. Arkansas Dep't of Pollution Control & Ecology, No. LR-C-92-684, Order (E.D.Ark. Oct. 30, 1992). The order allowed two already scheduled test burns of the T-wastes to go forward, but enjoined any further burning until the court could conduct a hearing on the preliminary injunction. Id. The court did not enjoin the burning of D-wastes.
 
 
 9
 On December 24, 1992, the EPA filed a motion to dismiss, raising a number of issues, including lack of subject matter jurisdiction under CERCLA section 113(h). 42 U.S.C. § 9613(h). The district court has not ruled on this motion.
 
 
 10
 On January 5, 1993, the district court entered an order requiring the parties to address "whether a destruction removal efficiency (DRE) test for dioxin is required under the circumstances of this case." The parties submitted briefs, and the district court held a hearing on February 12, 1993. At that hearing, the district court stated that it doubted it had jurisdiction to consider anything other than defendants' compliance with EPA's regulations. The court stated that although the regulation did not require a demonstration of six nines DRE on dioxin, the purpose of the six nines rule was to insure that dioxins were being destroyed at that rate. The court continued the injunction and also extended the injunction to prohibit the incineration of D-wastes.
 
 
 11
 On February 16, 1993, the district court amended its temporary restraining order, extending the temporary restraining order until the conclusion of the hearing for preliminary injunction. Arkansas Peace Ctr. v. Vertac Site Contractors, No. LR-C-92-684, Order at 1-2, 1993 WL 95658 (E.D.Ark. Feb. 16, 1993). The district court found that the incinerator performance regulation required the showing of a 99.9999% destruction and removal efficiency for dioxin, not a surrogate chemical substance or Principal Organic Hazardous Constituent (POHC). Id. at 2. The court ruled that the burning of dioxin containing wastes violated EPA regulations, and that a violation of regulations tips the scale heavily toward a determination that potential irreparable harm to plaintiffs outweighs the potential harm to defendants. Id. The court also denied defense motions for stay pending appeal and certified the case for interlocutory appeal under 28 U.S.C.A. § 1292(b) (West Supp.1993). Id. at 1. Vertac, the EPA, and the Arkansas Department of Pollution Control and Ecology filed a petition for permission to appeal and motions for stay pending appeal with this court.
 
 
 12
 On February 25, 1993, we granted a temporary stay of the February 16, 1993, amended temporary restraining order, and later entered a stay pending appeal of the amended temporary restraining order. Arkansas Peace Ctr. v. Arkansas Dep't of Pollution Control & Ecology, No. 93-1447, slip op. at 5 (8th Cir. Mar. 2, 1993). We granted the motions for interlocutory appeal, expedited and consolidated the interlocutory appeals, and set the case for oral argument on March 17, 1993. Id. at 4-5.
 
 
 13
 On March 17, 1993, the district court entered a preliminary injunction barring all incineration of drums of hazardous wastes that had not already been shredded in preparation for incineration. Arkansas Peace Ctr. v. Arkansas Dep't of Pollution Control & Ecology, No. LR-C-92-684, Order at 12-13, 1993 WL 95654 (E.D.Ark. Mar. 17, 1993). The court found that Arkansas Peace Center had shown a probability of success on the merits because "defendants have not demonstrated that the incinerator can achieve a 99.9999% DRE on dioxin itself as is required by 40 C.F.R. 264.343." Id. at 11.
 
 
 14
 After oral arguments on March 17, 1993, we entered a temporary stay of the preliminary injunction and requested further briefing on whether to continue the stay pending appeal of the preliminary injunction. On April 2, 1993, we issued an order granting the stay pending appeal. Arkansas Peace Ctr. v. Arkansas Dep't of Pollution Control & Ecology, 992 F.2d 145, 147 (8th Cir.1993). We expedited briefing on the merits of the preliminary injunction, and heard oral argument on June 7, 1993.
 
 
 15
 At oral argument, the EPA informed us that the State contract for incineration of the Vertac wastes had been terminated because the Trust Fund had been depleted. The EPA informed us that the EPA and Vertac were finalizing a new contract for the continued incineration of the waste on that day. On June 14, 1993, Vertac moved for permission to file a supplemental joint appendix containing the contract documents.[5] These documents show that Vertac and URS Construction, Inc.-Colorado signed a contract on June 7, 1993, incorporating by reference a subcontract between URS and Vertac. The subcontract recited that URS is the prime contractor to provide professional services for the EPA, and under the terms of the prime contract, URS is to provide "program management and technical environmental services ... for the incineration of hazardous waste materials at the Vertac site in Jacksonville, Arkansas."[6]
 
 
 16
 We review a district court's grant or denial of a preliminary injunction "for abuse of discretion or misplaced reliance on an erroneous legal premise." Aswegan v. Henry, 981 F.2d 313, 314 (8th Cir.1992). The EPA argues that we should reverse the preliminary injunction based on two errors of law made by the district court. First, the EPA argues that the district court failed to recognize that the action is barred under CERCLA section 113(h). 42 U.S.C. § 9613(h)(4). Second, the EPA contends that the district court misinterpreted 40 C.F.R. § 264.343(a)(2) and that the regulation does not require demonstration of six nines DRE on dioxin itself; but instead, the operator must demonstrate such performance by measurement of a surrogate principal organic hazardous constituent more difficult to incinerate than dioxin.
 
 
 17
 Section 113(h) of CERCLA states: "No Federal court shall have jurisdiction under Federal law ... to review any challenges to removal or remedial action selected under section 9604 of this title, ... in any action except one of the following...." 42 U.S.C. § 9613(h). Section 113(h)(4) permits citizen suits challenging removal and remedial actions only if they allege:
 
 
 18
 that the removal or remedial action taken under section 9604 ... or secured under section 9606 ... was in violation of any requirement of this [Act]. Such an action may not be brought with regard to a removal where a remedial action is to be undertaken at the site.
 
 
 19
 42 U.S.C. § 9613(h)(4).
 
 
 20
 The EPA states that usage of the past tense in this section shows Congress' clear intent that the removal action be completed before suit may be filed, and that the district court has no subject matter jurisdiction over challenges to the decision to incinerate the drummed waste as part of a CERCLA cleanup until the action has been "taken" or "secured"--in other words, completed.
 
 
 21
 The EPA points out that the Seventh and Eleventh Circuits have ruled that there is no subject matter jurisdiction in circumstances akin to those here. In Alabama v. United States Environmental Protection Agency, 871 F.2d 1548 (11th Cir.1989), cert. denied, 493 U.S. 991, 110 S.Ct. 538, 107 L.Ed.2d 535 (1990), the Eleventh Circuit held that the plain language of section 113(h) bars suit until a remedial action is actually completed. Id. at 1557. In that case, the citizen group challenged the EPA's failure to provide them with notice and a hearing before choosing the appropriate remedial action for the site. Id. at 1554. The court held that section 113(h)(4) barred the claim because the citizen group challenged the implementation of the remedial plan. Id. at 1558.
 
 
 22
 The Seventh Circuit similarly held that section 113(h) barred private citizens from bringing suit challenging a consent decree between the EPA and a responsible party for failing to prepare an environmental impact statement in violation of the National Environmental Policy Act, 42 U.S.C. §§ 4321-4347 (1988). Schalk v. Reilly, 900 F.2d 1091, 1095 (7th Cir.), cert. denied, 498 U.S. 981, 111 S.Ct. 509, 112 L.Ed.2d 521 (1990). The court rejected the citizens' argument that they were not challenging the remedial action, stating that "challenges to the procedure employed in selecting a remedy nevertheless impact the implementation of the remedy and result in the same delays Congress sought to avoid by passage of the statute." Id. at 1097. Other courts, including this court, have also dismissed suits by potentially responsible parties challenging remedial actions for lack of subject matter jurisdiction. See, e.g., North Shore Gas Co. v. Environmental Protection Agency, 930 F.2d 1239, 1244 (7th Cir.1991) (barring challenge under Resource Conservation and Recovery Act and National Environmental Policy Act to remedial action under section 113(h)); Voluntary Purchasing Groups, Inc. v. Reilly, 889 F.2d 1380, 1388 (5th Cir.1989); Solid State Circuits, Inc. v. United States Environmental Protection Agency, 812 F.2d 383, 386 n. 1 (8th Cir.1987).
 
 
 23
 The Arkansas Peace Center, in rejoinder, argues that the district court based its preliminary injunction on two of its claims, both of which were brought under the RCRA, 42 U.S.C.A. §§ 6901-6992k (West 1983 & Supp.1992), and that it is not challenging the removal action. The Arkansas Peace Center argues that under 42 U.S.C. § 6972(b)(1)(B), it is not precluded from bringing suit based on a violation of a specific requirement, such as its claim that the EPA, the State, and Vertac are in violation of the destruction and removal efficiency requirement of 42 U.S.C. § 6924(o ) and 40 C.F.R. § 264.343(a). The Center also contends that section 113(h) does not apply because its challenge is to a State proposed incineration action under state law, and it is not challenging a federal removal action.
 
 
 24
 The Arkansas Peace Center's claims, although couched in terms of a RCRA violation, challenge a removal action. Other courts have consistently held that challenges to remedial actions based on violations of other statutes, including RCRA, are barred under section 113(h). See North Shore Gas, 930 F.2d at 1244; Boarhead Corp. v. Erickson, 923 F.2d 1011, 1024 (3d Cir.1991) (holding that the district court lacks jurisdiction to consider claims under the National Historic Preservation Act, or any other statute, that would interfere with the EPA's clean-up activities on a Superfund site).
 
 
 25
 The Arkansas Peace Center points to a recent Tenth Circuit case, United States v. Colorado, 990 F.2d 1565 (10th Cir.1993), to support its argument that a RCRA enforcement suit is not a challenge to a CERCLA response action, and therefore, not barred under section 113(h). The Tenth Circuit case, however, involved a state's attempt to enforce its hazardous waste requirements at a federal facility where a CERCLA response action was underway. Id. at 1577. The Tenth Circuit held that the state's suit was not barred under section 113(h). Id. at 1576. In so ruling, the court relied on 42 U.S.C. § 9614(a), which provides that "[n]othing in [CERCLA] shall be construed or interpreted as preempting any State from imposing any additional liability or requirements with respect to the release of hazardous substances within [the] State." Id. The Tenth Circuit limited its holding to an action brought by a state, and distinguished Schalk on the ground that Schalk was a citizen action. Id. at 1576-77. In spite of United States v. Colorado, Arkansas Peace Center is met with the plain wording of section 113(h).
 
 
 26
 The Arkansas Peace Center also argues that its suit is authorized under 42 U.S.C. § 6972(a)(1)(B). The Center explains that the imminent endangerment claim that it alleges is the incineration itself, not the CERCLA section 104 response action. The citizen suit provision the Arkansas Peace Center cites expressly proscribes citizen suits when either the EPA or a state is actually engaged in a CERCLA removal action. 42 U.S.C. § 6972(b)(2)(B)(ii), (b)(2)(C)(ii). The Center's argument that these prohibitions do not apply because this is not a removal action, and that there is no administrative record to support the fact that the incineration is part of a CERCLA section 104 removal action, is simply contrary to the record. The EPA considered and approved the drum waste incineration as part of a section 104 removal action. The Engineering Evaluation/Cost Analysis for the Site stated: "The scope of the overall removal action at the Vertac site is to destroy through incineration wastes currently stored in drums on the site." The September 28, 1992, memorandum, requesting a removal action ceiling increase and exemption from the statutory $2,000,000 limit for the Site, stated that the remaining drums at the site "present an imminent and substantial danger to the public health, welfare, and the environment," and that "an immediate federal removal action is necessary to continue and complete the destruction of the drummed hazardous wastes." This exemption is authorized under CERCLA section 104. 42 U.S.C. § 9604(c)(1)(C). The memorandum also stated that the Vertac project meets the criteria for exceeding the $2,000,000 ceiling limit for removal actions, and that federal funds are required "to complete the destruction of the remaining drummed dioxin wastes by providing federal funds for onsite incineration of the wastes." Finally, the EPA's taking over the responsibility and funding for the incineration as shown in the June 7, 1993, contract answers the Center's argument that this is a state, not a federal removal action.[7]
 
 
 27
 Having concluded that we lack subject matter jurisdiction, our inquiry must end. See Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 379-80, 101 S.Ct. 669, 676, 66 L.Ed.2d 571 (1981).
 
 
 28
 Nevertheless, if we were free to consider the merits of this appeal, we would entertain no doubt that the district court erred in its reading of 40 C.F.R. § 264.343. The district court stated in its order dictated from the bench: "I agree with the Defendants that on its face the regulation does not require a demonstration of six nine DRE on dioxin," but then added that the regulation could "have no other rational basis or purpose than to insure that you are getting at least that on dioxin."
 
 
 29
 The language of the regulation is specific in stating that with respect to the six nines DRE for each principal organic hazardous constituent "this performance must be demonstrated on POHC's that are more difficult to incinerate than [dioxins]." 40 C.F.R. § 264.343(a)(2). If there was any doubt as to this meaning, the EPA's notice of amendment of regulations made clear that it was rejecting the proposal to require trial burns on dioxin rather than on a more difficult to incinerate surrogate. See 50 Fed.Reg. 1978, 1991 (1985). The EPA reasoned that determining compliance with the requirement of a six nines DRE on dioxin would be difficult, if not impossible, without using surrogates because concentrations of dioxin are too low to find measurable amounts in the stack gas and public health considerations preclude "spiking" the wastes with higher concentrations. Id. This would be an additional reason for the judgment we now enter.
 
 
 30
 We conclude that this case is barred under section 113(h) of CERCLA. We reverse the preliminary injunction order, and remand to the district court with directions to dismiss the case for lack of subject matter jurisdiction.[8]
 
 
 
 [1]
 The EPA first listed the site on its National Priorities List in 1979, 40 C.F.R. Pt. 300, App. B (1984), and the site currently ranks number eighteen. 40 C.F.R. Pt. 300 App. B (1992)
 
 
 [2]
 42 U.S.C. § 9604, as amended by the Superfund Amendments and Reauthorization Act of 1986 ("SARA") (codified as amended at 42 U.S.C. §§ 9601-9675) (West 1983 & Supp.1992) and 26 U.S.C. § 9507 (West Supp.1992))
 
 
 [3]
 40 C.F.R. § 264.343(a)(2) provides:
 An incinerator burning hazardous wastes FO20, FO21, FO22, FO23, FO26, or FO27 must achieve a destruction and removal efficiency (DRE) of 99.9999% for each principal organic hazardous constituent (POHC) designated (under § 264.342) in its permit. This performance must be demonstrated on POHCs that are more difficult to incinerate than tetra-, penta-, and hexachlorodibenzo-p-dioxins and dibenzofurans....
 
 
 [4]
 Environmental Health Association of Arkansas, Jacksonville Mothers' and Children's Defense Fund, Veterans of America, Arkansas State Chapter, and Mothers Air Watch. We will refer to these groups as simply Arkansas Peace Center for purposes of this appeal
 
 
 [5]
 Although the Arkansas Peace Center opposes this motion, we grant the motion to file the supplemental appendix
 
 
 [6]
 On June 8, 1993, URS directed to MK-Environmental Services Division, Managing Partner of Vertac, a notice to proceed with the June 7, 1993 contract, with copies sent to EPA representatives. The subcontract recited that at the time the agreement became effective, approximately 15,947 of the original 28,440 drums requiring incineration remained at the Vertac sites. The subcontract further confirmed that the trust funds in the Arkansas Department of Pollution Control and Ecology contract were expected to be depleted by May 1993. The contract provided that Vertac would perform thermal destruction operations and planning as defined by the Destruction and Removal Efficiency standards set forth in 40 C.F.R. 264 Subpart O. The contract recited that the EPA considered the "Waste at the Vertac site to pose an imminent and substantial endangerment to human health and the environment." Because of that urgency, the subcontract stated that EPA was conducting the incineration activity as a "time-critical emergency removal action" requiring that Vertac be prepared to begin drum incineration upon URS's written notice or no later than the date of conclusion of the Arkansas contract. The subcontract represented that the target incineration completion date was 17.81 months, or 542 calendar days, following the issuance of a notice to proceed
 
 
 [7]
 The EPA also argues that the Center's CERCLA claims do not comply with the sixty-day notice requirement of CERCLA section 310(d)(1). See 42 U.S.C. § 9659(d)(1). In light of our holding that we have no subject matter jurisdiction, we need not reach this issue
 
 
 [8]
 Arkansas Peace Center filed an additional motion for temporary restraining order and preliminary injunction on June 18, 1993. In response to a petition for writ of prohibition, we ordered that the district court first decide the jurisdictional issues before proceeding to consider the motion. In re Vertac Site Contractors, No. 93-2641, Order at 2 (8th Cir. June 30, 1993). In this opinion we do not consider whether the new motion of June 18 presents any issue with respect to jurisdiction other than those that we deal with today. We will reach that issue when the record has been developed